**Rosalie E. WATTERSON, Appellant (Claimant Below),**

v.

**REVIEW BOARD OF the INDIANA DEPARTMENT OF EMPLOYMENT AND TRAINING SERVICES, Michael K. Bonnell, Joe A. Harris, and George H. Baker, As Members of the Review Board, and T.J. Maxx, Appellees.**

No. 93A02–9010–EX–623.

Court of Appeals of Indiana,
First District.

April 2, 1991.

Katherine J. Rybak, Legal Services Organization of Indiana, Inc., Evansville, Donald R. Lundberg, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant.

Allan G. Loosemore, Jr., Shaw & Loosemore, P.C., Evansville, for appellees.

ROBERTSON, Judge.

Rosalie E. Watterson appeals the determination of the Indiana Department of Employment and Training Services that Watterson's rights to unemployment compensation were appropriately suspended for the reason that she had been discharged for just cause. Watterson raises six issues; but, because one is dispositive, we reverse.

## FACTS

Watterson was terminated from her job at T.J. Maxx for violations of the employer's attendance policy. The attendance policy is part of the collective bargaining agreement between the International Ladies Garment Workers Union and T.J. Maxx. At the hearing in this matter, in which Watterson was not represented by counsel, T.J. Maxx did not introduce written documentation regarding the fine points of its attendance policy that justified Watterson's discharge. Under the T.J. Maxx work attendance policy as described by the oral testimony of one of its employees, an employee is assessed points for being absent or tardy. An employee can improve her position through good attendance. On the first of each month, all points which are more than one year old are dropped off or rolled back from the employee's record. The policy also operates on the principle of progressive discipline. When an employee has incurred 30 points, she receives a written warning. An employee who has accumulated 60 points and has received a written warning will receive a three-day suspension without pay. An employee who has accumulated 90 points, received the written warning, and the three day suspension is subject to termination. In order to avoid being assessed points in the event of an absence or tardiness, an employee must call in and report her absence or tardiness at least an hour in advance and bring in a note from her doctor or lawyer documenting that the absence or tardiness was necessary. The employ-

er's representative testified that points are assessed as follows:

(1) an absence or tardiness in excess of one hour without calling in ahead of time —20 points;

(2) an unexcused absence in which the employee does report her absence ahead of time—10 points;

(3) leaving work before the end of the scheduled work shift—7 points;

(4) an unexcused tardy of less than 7 minutes when the employee calls in ahead of time—7 points;

(5) an unexcused tardy of more than 7 minutes when the employee calls in ahead of time—8 points.

Watterson had accumulated 56 points by June 1, 1989. She had received her written warning previously. On June 1, 1989, by agreement with the union, the employer rolled back all of the employees' points early and Watterson's accumulation was reduced to 30. Watterson had accumulated 60 points by October 23, 1989 and received her three day suspension without pay. By January 30, 1990, she had accumulated 70 points. All of the penalties assessed against her thus far had been in increments of 7, 8, and 10 points for each instance of absence or tardiness. Had her employment relationship with T.J. Maxx survived until February 1, 1990, 20 points that had accrued in January of 1989 would have been rolled back and she would have had 50 points.

However, on January 30, 1990, Watterson failed to call in and was tardy in excess of one hour. She had been required to attend a court hearing that morning regarding a child custody matter. When she did come in on January 30, she presented her supervisor with a note from her attorney documenting the reason for her tardiness.

Although Watterson acknowledged that she understood that she was required to call in ahead of time to report that she would be absent or tardy, she testified that she did not believe she was required to do so on January 30, 1990 because she had notified her supervisor before leaving her shift on January 29 that she would be late because of the custody hearing. The supervisor testified at the hearing that Wat-

terson had not told him she would be late on the day in question. The Board did not resolve this factual dispute and found instead that—under the rule—informing one's supervisor the day before is insufficient as the rule requires that an employee must call in ahead of time to report an absence or tardiness.

The January 30 unreported tardiness in excess of one hour cost Watterson 20 points and gave her a total of 90 points. She was terminated for violating the work rule and later denied unemployment benefits.

## DECISION

On review, we must determine whether the decision of the Review Board is reasonable in light of its findings. *Blackwell v. Review Bd. of Indiana Dept. or Employment and Training Services* (1990), Ind. App., 560 N.E.2d 674. Generally, as to questions of fact, the decision of the Review Board is conclusive and binding. *Id.* We are limited to an examination of the evidence and the reasonable inferences to be drawn therefrom which support the Board's decision. *Id.* We must accept the facts as found by the Review Board unless its findings fall within one of the recognized exceptions which include those instances where the evidence on which the Review Board based its finding was devoid of probative value. *Id.*

■ Unemployment compensation may be denied to employees who are discharged for just cause. IND.CODE 22–4–15–1(d). Discharge for just cause includes a knowing violation of a reasonable and uniformly enforced rule of an employer. IND.CODE 22–4–15–1(d). It is the employer's burden to prove it had a uniformly enforced work rule. *Citizens Gas and Coke Utility v. Review Bd. of Indiana Employment Sec. Div.* (1984), Ind.App., 471 N.E.2d 1175, *trans. denied.*

■ As a matter of law, unless the parties stipulate to what the rule states, if the rule is not reduced to writing when introduced into evidence, it is impossible for this court to fairly and reasonably review the

Board's decision. *Blackwell*, 560 N.E.2d 674. In *Blackwell*, the only evidence of the employer rule was presented through oral testimony. The *Blackwell* court noted:

> [b]ecause the rule was not produced, we do not know whether the employees are informed that the prohibited conduct—whatever it is—results in a dismissal—a discharge—or whether the employees are informed such conduct [constitutes voluntarily leaving employment]. We do not know if the rule requires the employee to personally give notice to the supervisor or, if, in an emergency situation, the employee might ask a co-worker to inform the supervisor.

560 N.E.2d at 679. The *Blackwell* court went on to hold that while it was clear the employee knew that leaving work without permission could subject her to disciplinary action, it was not clear that she knew it could subject her to discharge. Therefore, the *Blackwell* court held that because the rule was neither introduced into evidence in written form or stipulated to by the parties, it could not fairly and reasonably review the Board's decision and was required to reverse the Board's decision for an insufficiency of the evidence.

T.J. Maxx's work rule had been reduced to writing. It was part of the collective bargaining agreement with union. However, it was not introduced into evidence as was the collective bargaining agreement involved in *Jeffboat, Inc. v. Review Bd. of Indiana Employment Sec. Div.* (1984), Ind.App., 464 N.E.2d 377. As mentioned above, the only evidence regarding T.J. Maxx's rule was introduced through the employer's oral testimony. Yet, the most hotly contested issues involved what the rule actually stated. Watterson asserts the evidence is insufficient to establish 1) that the rule imposed the most severe penalty of 20 points for *an excused* absence when the employee fails to call in and 2) that the rule provided that an employee could not report an absence or tardiness in any other manner than calling in. Watterson also asserts that—if the employer's rule states what the employer asserts it does—it is unreasonable.

Watterson's testimony indicates that she acknowledged all of the employer's assertions regarding the rule except for the penalty of 20 points imposed for an unreported tardiness in excess of one hour. She was well aware that the accumulation of 90 points would result in her dismissal and that on January 30, 1990, she had accumulated 70 points. She was also aware that she was to call in ahead of time to report that she would be absent or tardy. However, the Board has presented no evidence that when Watterson arrived late on the morning of January 30 with a note from her attorney explaining that she had been at a court hearing that morning that she knew she would be slapped with a penalty of 20 points—a penalty twice as severe as any penalty she had ever received before, a penalty equal to the minimum amount necessary to secure her dismissal.

We agree with the *Blackwell* court that—absent stipulation—an employer's asserted work rule must be reduced to writing and introduced into evidence in order for us to fairly and reasonably evaluate a determination that an employee was justly discharged for a knowing violation of that rule. We believe that such is the minimum evidence necessary for the employer to satisfy its burden, by substantial evidence of probative value, that it has a rule and that that rule is reasonable and uniformly enforced.

T.J. Maxx asserts that the rule announced in *Blackwell* was not in effect at the time of Watterson's hearing as the *Blackwell* decision was handed down after the hearing. It asserts that absent the *Blackwell* rule, the evidence regarding its work rule was sufficiently established through the testimony of its employee. Watterson effectively counters by pointing out that according to T.J. Maxx's argument, the employer in *Blackwell* could not have been required to comply with the *Blackwell* rule. Moreover, we agree with Watterson that the *Blackwell* decision does not change the law but merely clarifies what is required to constitute evidence of probative value regarding the proof of an alleged employer rule, its reasonableness, and whether it is uniformly enforced.

In the present case, the dispute centered around what the employer's rule stated and whether the rule was reasonable. We do not believe that the requirement imposed by the *Blackwell* decision—that absent stipulation of the parties, the employer must present the rule it relies on to justify its discharge of an employee for just cause in writing—is unreasonable. We agree with the *Blackwell* court that—absent stipulation or written documentation—we are unable to discern the content of the employer rule and thus determine whether the rule is reasonable and uniformly enforced. Based on the *Blackwell* decision, we must reverse the Board's decision and remand with instructions to reinstate Watterson's benefits.

Judgment reversed.

RATLIFF, C.J., and CONOVER, J., concur.