STANRAIL CORP., Appellant–
Respondent,

v.

REVIEW BOARD OF the DEPARTMENT OF WORKFORCE DEVELOPMENT and Willie S. Lemley, Appellees–Petitioners.

No. 93A02–0002–EX–101.

Court of Appeals of Indiana.

Sept. 29, 2000.

Patrick B. McEuen, Singleton, Crist, Austgen & Sears, Munster, Indiana, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellees.

## OPINION

ROBB, Judge

The Stanrail Corporation ("Stanrail") appeals the decision of the Unemployment Insurance Review Board (the "Board") granting Willie S. Lemley ("claimant") un-employment insurance benefits. We affirm.

### Issue

Stanrail raises the following consolidated and restated issues for our review: whether the Board's decision to grant unemployment benefits to claimant was contrary to law.

### Facts and Procedural History

The facts reveal that Stanrail is an Indiana corporation that manufactures railroad car parts and accessories. Claimant was hired by Stanrail on October 10, 1996, as a full-time laborer. During the term of claimant's employment, Stanrail implemented an attendance policy. Under the attendance policy, excused absences were listed as: (1) vacation; (2) bereavement; and (3) "three-day" absence due to illness.[1] For a "three-day" absence to be valid, an employee was required to submit to Stanrail upon return to work medical documentation identifying the employee as the patient and dates of treatment. An employee under the original attendance policy was allowed unlimited "three-day" absences for illness during a calendar year.

Thereafter, Stanrail determined that its employees were taking too many "three-day" absences from work. Consequently, on April 18, 1998, Stanrail modified its attendance policy, limiting the number of "three-day" excused absences for illness an employee could take in a calendar year to three. In addition, the modification provided that Stanrail would notify an employee with a written warning when the employee accrued two excused "three-day" absences. Therefore, under the revised attendance policy, each "three-day" absence for illness beyond the stated limit of three during a calendar year would be deemed unexcused and the employee

---

1. A "three-day" absence is an unpaid absence from work that lasts three days or longer. Stanrail initially gave all employees unlimited excused "three-day" absences because it was assumed most employees would not take advantage of the excused absence because they would not be paid during the time off from work. R. 55. In addition to the "three-day" absence, Stanrail gave each employee five paid sick days and two personal days per year. *See* R. 53, 58. In addition, Stanrail gave employees a certain number of paid vacation days, depending on the years of service with Stanrail. R. 58.

would be assessed demerit points, regardless of whether the employee provided Stanrail with medical documentation for that absence.

Stanrail also had in place during the term of claimant's employment a demerit policy. Under the demerit policy, any employee who accumulated 501 demerit points a calendar year was discharged. Employees of Stanrail received demerits for: (1) safety violations; (2) tardiness; (3) failure to punch their time card in or out; (4) damage to equipment; (5) unexcused absences; and (6) failure to report an absence. According to the demerit policy, an employee was assessed 100 demerit points for each full day of work missed which was deemed to be an unexcused absence and 25 demerit points for a half-day unexcused absence from work. Stanrail published both the attendance and demerit policies to all of its employees.

On April 28, 1998, Stanrail issued claimant an "employee disciplinary report," advising him that he had accrued two "three-day" excused absences for illness during the 1998 calendar year and that he had one "three-day" excused absence remaining. On July 14, 1998, claimant was issued an "employee disciplinary report" informing him that he had accumulated 225 demerit points for unexcused absences from work. On July 31, 1998, Stanrail issued claimant another "employee disciplinary report" advising him that he had accrued three "three-day" excused absences for illness and that the next "three-day" absence would result in Stanrail assessing him demerit points. Claimant was absent from work from September 4–16, 1998. Upon returning to work on September 17, 1998, claimant provided Stanrail with medical documentation that provided that he had been treated for contact dermatitis by a physician from September 4–16, 1998. However, Stanrail deemed claimant's absence unexcused and discharged him on September 17, 1998 for accumulating more than 500 demerit points.[2]

Shortly after being discharged, claimant filed for unemployment benefits. Thereafter, Stanrail opposed claimant's application, claiming that he had been discharged for "just cause" because he had accumulated more than 500 demerit points during a calendar year. Later, a deputy from the Indiana Department of Workforce Development granted claimant's application for unemployment benefits. Subsequently, Stanrail filed a timely Notice to Appeal the grant of unemployment benefits and requested a hearing before an administrative law judge ("ALJ"). After conducting the hearing, the ALJ reversed the deputy's grant of unemployment benefits to claimant, concluding that Stanrail discharged claimant for "just cause." Consequently, claimant filed a Request for Appeal to the Board. The Board ultimately adopted the ALJ's findings of fact, except to the extent it was inconsistent with the Board's decision, concluding that the claimant was entitled to unemployment benefits because claimant could not have "knowingly" violated Stanrail's attendance policy and that the limit of "three-day" absences was not uniformly enforced within the class of which claimant was a member. This appeal ensued.

*Discussion and Decision*

I. Standard of Review

■ The Indiana Unemployment Compensation Act[3] provides that "[a]ny deci-

---

2. Claimant accumulated 300 demerit points for missing a full day of work unexcused on March 30, June 22, and August 24 of 1998. R. 126. In addition, he accumulated 50 demerit points for missing one-half day of work unexcused on March 27 and August 12 of 1998. *Id.* Because Stanrail deemed claimant's absence from work on September 4–16 of 1998 unexcused, he accumulated an addi-

tional 800 demerit points for a total of 1150 demerit points as of September 17, 1998. *Id.*

3. We note that the purpose of the Unemployment Compensation Act is to provide benefits to those who are involuntarily out of work through no fault of their own, for reasons beyond their control. *Wasylk v. Review Bd. of the Indiana Employment Sec. Div.*, 454 N.E.2d 1243, 1245 (Ind.Ct.App.1983). The purpose

sion of the review board shall be conclusive and binding as to all questions of fact." Ind.Code § 22–4–17–12(a). When the Board's decision is challenged as contrary to law, the reviewing court is limited to a two-part inquiry into the "sufficiency of the facts found to sustain the decision" and the "sufficiency of the evidence to sustain the findings of facts." Ind.Code § 22–4–17–12(f). Under this standard, we are called upon to review: (1) determinations of specific or basic underlying facts; (2) conclusions or inferences from those facts, or determinations of ultimate facts; and (3) conclusions of law. *McClain v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1317 (Ind.1998).

 Review of the Board's findings of basic fact is subject to a "substantial evidence" standard of review. *Id.* In this analysis, we neither reweigh the evidence nor assess the credibility of witnesses and consider only the evidence most favorable to the Board's findings. *General Motors Corp. v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 671 N.E.2d 493, 496 (Ind. Ct.App.1996). We will reverse the decision only if there is no substantial evidence to support the Board's findings. *KBI, Inc. v. Review Bd. of the Ind. Dep't of Workforce Dev.*, 656 N.E.2d 842, 846 (Ind.Ct. App.1995).

 The Board's determinations of ultimate facts involve an inference or deduction based upon the findings of basic fact and is typically reviewed to ensure that the Board's inference is reasonable. *McClain*, 693 N.E.2d at 1317–18. We examine the logic of the inference drawn and impose any applicable rule of law. *Id.* at 1318. Some questions of ultimate fact are within the special competence of the Board, and it is therefore appropriate for

us to accord greater deference to the reasonableness of the Board's conclusion. *Id.* However, as to ultimate facts which are not within the Board's area of expertise, we are more likely to exercise our own judgment. *Id.*

 Finally, we review conclusions of law to determine whether the Board correctly interpreted and applied the law. *Parkison v. James River Corp.*, 659 N.E.2d 690, 692 (Ind.Ct.App.1996). In sum, basic facts are reviewed for substantial evidence, conclusions of law are reviewed for their correctness, and ultimate facts are reviewed to determine whether the Board's finding is a reasonable one. *McClain*, 693 N.E.2d at 1318. The amount of deference given to the Board turns on whether the issue is one within the particular expertise of the Board. *Id.*

## II. Discharged for "Just Cause"

 Initially, we note that in Indiana, an unemployed claimant is ineligible for unemployment benefits if he is discharged for "just cause." *Ryan v. Review Bd. of Indiana Dep't of Employment and Training Serv.*, 560 N.E.2d 112, 114 (Ind.Ct.App.1990); Ind.Code § 22–4–15–1. Indiana statute provides in pertinent part that:

. . .

(d) "Discharge for just cause" as used in this section is defined to include but not be limited to:

(2) knowing violation of a reasonable and uniformly enforced rule of an employer;

Ind.Code § 22–4–15–1(d)(2). Stanrail asserted that claimant was discharged for "just cause" pursuant to Indiana Code section 22–4–15–1(d)(2).[4] Specifically, Stan-

---

of unemployment compensation legislation is to enable unfortunate employees who become and remain involuntary unemployed by adverse business and industrial conditions, to subsist on a reasonably decent level and is in keeping with the humanitarian and enlightened concepts of the modern day. *Id.* (quot-

ing 76 Am.Jur.2d Unemployment Compensation § 5 at 879).

**4.** We agree with the point raised in *Love v. Heritage House*, 463 N.E.2d 478 (Ind.Ct.App. 1983), that an attendance policy may permit an employer to discharge an employee under the policy without regard to whether the ab-

rail discharged claimant because he accumulated more than 500 demerit points during the 1998 calendar year. To establish a prima facie case for violation of an employer rule under Indiana Code section 22–4–15–1(d)(2), it is necessary for the employer to show that the claimant: (1) knowingly violated; (2) a reasonable; and (3) uniformly enforced rule. *Hehr v. Review Bd. of the Indiana Employment Sec. Div.*, 534 N.E.2d 1122, 1125 (Ind.Ct.App. 1989). After the employer has met his burden, the claimant must present evidence to rebut the employer's prima facie showing. *Russell v. Review Bd. of the Indiana Dep't of Employment & Training Serv.*, 586 N.E.2d 942, 948 (Ind.Ct.App. 1992).

 In the present case, the parties dispute whether Stanrail established the first and third elements of its prima facie case that claimant was discharged for "just cause," whether claimant "knowingly" violated Stanrail's attendance policy and whether this policy was uniformly enforced. To have "knowingly" violated an employer's rule, the employee must: (1) know of the rule; and (2) know his conduct violated the rule. *KBI, Inc.*, 656 N.E.2d at 845. The Board must make a finding as to whether an employee knew that his conduct violated an employer rule because the text of Indiana Code section 22–4–15–1(d)(2) requires a "knowing violation" of a rule rather than merely a violation of a known rule. *Id.* Furthermore, we have previously held that misconduct which will

justify discharge of an employee so as to make the employee ineligible for unemployment compensation is the "wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rule, or wrongful intent." *Merkle v. Review Bd. of Indiana Employment Sec. Div.*, 120 Ind.App. 108, 90 N.E.2d 524, 526 (1950).

 A uniformly enforced rule is one that is carried out in such a way that all persons under the same conditions and in the same circumstances are treated alike. *General Motors Corp.*, 671 N.E.2d at 498. In order to evaluate uniformity one must first define the class of persons against whom uniformity is measured. *McClain*, 693 N.E.2d at 1319. Typically, this determination is a question of law but it may be informed by appropriate findings as employer practices. *Id.* Once the class is defined, the question of whether the employer treats the persons within the class consistently is a basic factual inquiry and is reviewed subject to the substantial evidence test and for conformity to law. *Id.*

## III. Was the Board's Decision "Contrary to the Law and Evidence"?

Stanrail contends that the Board's decision to grant unemployment benefits to claimant was contrary to law. We disagree.

sence is excused or unexcused, while at the same time not disqualifying that employee from obtaining unemployment benefits under Indiana Code section 22–4–15–1(d)(3) because the employee provided "good cause" for the absence. However, while the disqualifying factors in subsection d are disjunctive and the employer need only show one of the eight, Stanrail does not support its position under (d)(3), but rather relies on (d)(2). Perhaps it is because its policy is not a "true" attendance policy. Theirs is a demerit program which includes the assessment of points for conduct other than those related to absences and tardies (such as failure to wear safety glasses, horseplay, etc.). Thus, we ex-

press no opinion as to whether an employer can rely on (d)(3) rather than (d)(2) where all the points accumulated relate to attendance. We refuse to become an advocate for Stanrail and limit our review to those issues raised by Stanrail on appeal. To do so otherwise would be in contravention of Indiana Appellate Rule 8.3(A)(7), which provides in pertinent part that "[e]ach error that appellant intends to raise on appeal shall be set forth specifically and followed by the argument applicable thereto." Furthermore, an appellant waives a general review of issues not properly preserved or raised on direct appeal. *Mitchell v. State*, 455 N.E.2d 1131, 1132 (Ind.1983).

## A. Findings Of Fact

Our initial inquiry is to determine whether the Board's findings of fact were supported by substantial evidence. Stanrail argues that "the record is devoid of any probative evidence" to support the Board's finding of fact with regard to claimant "knowingly" violating Stanrail's attendance policy. Furthermore, Stanrail argues that the finding of fact with regard to the uniform enforcement of Stanrail's attendance policy was "premised upon such a meager quantum of evidence that a reviewing court cannot but conclude that the finding does not rest on a rationale basis." The Board's findings of fact provides in pertinent part that:

> [Stanrail's] Human Resource Manager testified that an employee who was pregnant or had been hospitalized would not be subject to demerit points; however, a person who was instructed by the doctor to stay home in bed would not be excused. The decision to excuse or not to excuse absences was a matter of personal discretion for the Human Resource Manager. He gave no indication of what rationale guided him to that decision.

R. 9.

In the present case, Richard Ringel, the human resource manager for Stanrail, testified that he was in charge of maintaining the employee attendance records during claimant's tenure of employment with Stanrail. R. 50. Ringel further testified that the attendance policy was written and published to all employees to encourage the attendance of the workforce and discourage absenteeism. R. 51. Ringel testified that there could be exceptions to the provision of the written attendance policy which limited "three-day" absences to three a calendar year. R. 80. Ringel testified that an employee who was pregnant, had a heart attack, or cancer, would not necessarily be assessed demerit points for exceeding the limit of three "three-day" absences under the attendance policy. R. 79. Ringel further testified that an employee who had a serious illness and was hospitalized would not be given demerit points for exceeding the "three-day" absence limit. R. 84. However, an employee with a serious illness who was directed to remain in bed by a physician would be assessed demerit points if his absence exceeded the "three-day" limit. *Id.* Ringel testified that it was within his discretion to determine whether an employee was excepted from the "three-day" absence limit of the attendance policy, as there was no written policy which provided the criteria for determining whether an individual was entitled to an exception under the policy. R. 85. Thus, we believe that there was substantial evidence to support the Board's finding of facts.

## B. Conclusion of Law

Because we have determined that the Board's findings of fact were supported by substantial evidence, we must now examine whether the Board's findings of fact support its conclusions of law. The Board's conclusions of law provide in pertinent part that:

> [Stanrail's] policy cannot be uniformly enforced as administered. Not all excused absences resulted in the award of points. [Stanrail's] human resources manager exercised unbridled discretion in determining whether demerit points were or were not assessed under the policy. Without any written, standard policy to define what absences are assigned demerit points, the rule cannot be considered uniformly enforced. Furthermore, an employee cannot determine in advance whether demerit points will be assessed and, therefore, cannot knowingly violate the policy. Therefore, [Stanrail's] demerit program fails to meet the standards required for just cause under Indiana Code section 22–4–15–1(d)(2) for a reasonable and uniformly enforced policy. [Stanrail] discharged the claimant but not for just cause.

R. 35.

## A. "Knowingly" Violated the Work Rule

■ Stanrail first argues that the Board erred in concluding that an employ-

ee could not "knowingly" violate the limit of "three-day" absences under the attendance policy. Stanrail argues that it published its written attendance policy to all employees, and thus, claimant had knowledge that he was violating the policy and would be assessed demerit points when he exceeded the limit of "three-day absences."

■ An employer's asserted work rule must be reduced to writing and introduced into evidence to enable this court to fairly and reasonably review the determination that an employee was discharged for "just cause" for the knowing violation of a rule. *KBI, Inc.*, 656 N.E.2d at 844. In *Watterson v. Review Bd. of Indiana Dep't of Employment & Training Serv.*, 568 N.E.2d 1102 (Ind.Ct.App.1991), the claimant's employment was terminated for allegedly violating the employer's rule regarding tardiness and excessive absences. However, no written rule was introduced into evidence, and the substance of the policy was explained by the employer's oral testimony. *Id.* at 1104–105. In reversing the Board's decision, which denied the claimant benefits, we determined that "absent stipulation of the parties, the employer must present the rule it relies on to justify its discharge of an employee for just cause in writing." *Id.* at 1106.

In the present case, Stanrail introduced into evidence the written rule claimant allegedly violated, its attendance policy. R. 115–22. The attendance policy provides in pertinent part that:

> Excused absences are: ... (2) illness three (3) or more days. Must submit upon return to work a Medical Receipt identifying employee as the patient and dates of treatment inclusive. Employee must work (75%) of regular scheduled workdays.

R. 115. Stanrail also introduced into evidence the notice it published to all of its employees informing them of the revision to the attendance policy. The notice provides that:

> Effective immediately!! We are limiting the number of three-day absences an employee can take in a calendar year to a total of three. Employees will be notified with a written warning at two.

R. 122. We agree with Stanrail that because the attendance policy and its revision were published to all employees, claimant had knowledge of the *written* attendance policy.

However, Ringel, the human resource manager of Stanrail, testified that there were exceptions to the limit of "three-day" absences under the attendance policy and that the determination of whether an individual fell within the exception was determined on a case-by-case basis with the sole discretion vested with him. R. 85. Our review of the record reveals that none of the criteria for determining whether an individual was entitled to an exception was written or published to Stanrail employees. Thus, it appears that Stanrail had both a written and unwritten attendance policy and that it did not strictly enforce the limit of "three-day" absences under the written attendance policy. Moreover, employees were not provided the criteria or the guidelines to determine whether they would be exempt from the assessment of demerit points for violating that provision of the attendance policy. Thus, claimant could not "knowingly" have violated Stanrail's attendance policy because he did not have knowledge of the exception to the limit of "three-day" absences under the policy. Ringel's oral testimony is insufficient for purposes of establishing that the claimant had knowledge of the written and unwritten attendance policy of Stanrail.

### B. Uniform Enforcement

■ Stanrail also argues that the Board erred in determining that Stanrail did not uniformly enforce the attendance policy. Specifically, Stanrail argues that the Board erred in defining the class of persons against whom uniformity is measured because the claimant's illness, contact dermatitis, "is different than a heart attack, cancer, asthma, or troubled preg-

nancy." Stanrail appears to define the class as those employees who are hospitalized[5] due to serious illnesses and have medical documentation identifying the employee as a patient and dates of treatment.

However, the written attendance policy does not differentiate between serious and minor illnesses, nor does it distinguish illnesses which require hospitalization and those which require bed rest at home. *See* R. 115–22. Therefore, we believe that the Board properly defined the class as those employees of Stanrail who are ill for three days or more and have medical documentation identifying the employee as the patient and dates of treatment. The Board's definition of the class is within the parameters of the written text of the attendance policy, while Stanrail's composition of the class encompasses the criteria the human resource manager utilized in making exceptions for employees under the attendance policy, criteria which was neither written nor published to Stanrail employees.

■■■ Because we believe that the Board properly defined the class, we must now determine whether the Board properly concluded that the attendance policy was not uniformly enforced within the class. After examining the Board's finding of facts, we are clearly convinced that they support that Board's determination that the human resource manager exercised "unbridled discretion" in determining whether demerit points would be assessed for an employee's violation of the limit of

"three-day" absences under the attendance policy.[6] Therefore, we hold that the attendance policy was not uniformly enforced because Stanrail did not treat members of the class similarly.

### Conclusion

Based on the foregoing, we hold that the Board properly granted unemployment benefits to claimant.

Affirmed.

MATTINGLY, J., concurs.

MATHIAS, J., concurs in result with separate opinion.

MATHIAS, Judge, concurring in result

As I expressed in *Stanrail Corp. v. Review Board,* 734 N.E.2d 1102 (Ind.Ct.App. 2000) (Mathias, J., concurring), I remain convinced that, notwithstanding "no fault" attendance policies, "just cause" discharge issues concerning employee attendance rules are to be reviewed exclusively under Indiana Code § 22–4–15–1(d)(3). As the statute is written in the disjunctive, such review should be completely separate from discharge issues concerning the alleged knowing violation of a reasonable and uniformly enforced work rule under Indiana Code § 22–4–15–1(d)(2).

If employers wish to create "no fault" disciplinary systems that establish demerit points for the different types of conduct described in Indiana Code § 22–4–15–1(d)(1)–(8), they are entitled to do so. However, until the General Assembly mod-

---

5. Ringel, the human resource manager for Stanrail, testified that exception to the limit of "three-day" absences under the attendance policy would be made for those employees who were hospitalized due to serious illness, but not those employees who were ordered by a physician to be on bed rest at home. R. 84. Thus, Stanrail appears to make a distinction between serious illness which results in hospitalization and serious illness that requires physician ordered bed rest at home, a distinction we find untenable.

6. We note that claimant posed hypotheticals to Ringel to determine under what circum-

stances an employee would not receive demerit points for exceeding the limit of "three-day" absences under the attendance policy. *See* R. 79. While actual similarly situated individuals with illnesses would have been more helpful in determining whether individuals in the class were treated differently by Stanrail, we believe that the hypotheticals served the purpose of demonstrating that Stanrail did not or would not uniformly enforce the attendance policy among the class, because unwritten discretionary factors were determinative in deciding whether an employee was excepted under the attendance policy.

ifies the statute, the conduct described under (d)(3) is entitled to independent consideration from that described under (d)(2), and without regard to the overall discipline system created by the employer.

In the present case, although Stanrail terminated Lemley's employment under (d)(2), and subsequent review was pursuant to that subsection, Lemley was in fact discharged for (d)(3) conduct. When Lemley returned to work from the absence for which he was terminated, he provided Stanrail with medical documentation explaining his absence. Under (d)(3), the "good cause" for Lemley's absence or lack thereof, should have been the dispositive focus of the intake deputy, the Administrative Law Judge and the Board. *Love v. Heritage House Convalescent Center,* 463 N.E.2d 478 (Ind.Ct.App.1983). While review of "good cause" under (d)(3) is more cumbersome than "no fault" addition and subtraction, such equitable review is mandated by the statute. Lemley's discrimination claim was properly the province of the Gary Metropolitan Human Relations Commission.

Nevertheless, because the record in this case supports the majority's result, I respectfully concur in that result.