

FILED

Sep 12 2013, 10:16 am

CLERK
of the supreme court,
court of appeals and
tax court

# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**NICHOLAS A. SNOW**
Harris Law Firm, P.C.
Crown Point, Indiana

ATTORNEYS FOR APPELLEE
REVIEW BOARD:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KYLE HUNTER**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE STARKE
COUNTY SHERIFF'S DEPARTMENT:

**MARTIN R. LUCAS**
North Judson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

GINA ALBRIGHT,                                  )
                                                )
    Appellant-Petitioner,                       )
                                                )
      vs.                                     )    No. 93A02-1301-EX-81
                                                )
REVIEW BOARD OF THE INDIANA                     )
DEPARTMENT OF WORKFORCE                         )
DEVELOPMENT and THE STARKE                      )
COUNTY SHERIFF'S DEPARTMENT,                    )
                                                )
    Appellees-Respondents.                      )

APPEAL FROM THE REVIEW BOARD
OF THE DEPARTMENT OF WORKFORCE DEVELOPMENT
Case No. 12-R-04829

**September 12, 2013**

**CRONE, Judge**

## Case Summary

Gina Albright worked as a 911 dispatcher for the Starke County Sheriff's Department

("the Department").[1]  After a firecracker exploded behind her, she experienced hearing loss,

vertigo, and tinnitus.  She received sick leave and worker's compensation.  After her doctor

determined that she was capable of returning to work, Albright did not return to work by

taking sick days, vacation days, and bereavement days.  After Albright failed to show up for

---

[1]  Indiana Administrative Rule 9(G)(1)(b)(xviii) provides that "[a]ll records of the Department of Workforce Development as declared confidential by Ind. Code § 22-4-19-6" are excluded from public access and are confidential in judicial proceedings.  Our supreme court cited this rule in support of its use of initials to identify the claimant and the employer in *J.M. v. Review Board of Indiana Department of Workforce Development*.  In the version of this opinion that appears on the supreme court's official website, footnote 1 reads, "Identities of the claimant and employing unit are generally subject to the confidentiality requirements prescribed in Indiana Code section 22-4-19-6(b) (2007). This confidentiality requirement is expressly implemented as to judicial proceedings by Indiana Administrative Rule 9(G)(1)(b)(xviii)."  No. 93S02-1203-EX-138, slip op. at *1 n.1 (Ind. Oct. 17, 2012).  http://www.in.gov/judiciary/opinions/pdf/10171201shd.pdf (last visited Sept. 11, 2013).  In fact, we cited this footnote in *T.B. v. Review Board of the Indiana Department of Workforce Development*, 980 N.E.2d 341, 343 n.1 (Ind. Ct. App. 2012).  Although there is no indication of the supreme court having issued an order that footnote 1 was being amended or entering notice thereof on the official docket maintained by the clerk of the supreme court, a different version of footnote 1 has been published in West's Northeastern Reporter. There, footnote 1 reads,

> Although in this case we kept the claimant and employing unit confidential, our practice going forward will be to keep these parties confidential only if they make an affirmative request as outlined in *Recker v. Review Board*, 958 N.E.2d 1136, 1138 n.4 (Ind. 2011).  As discussed in *Recker*, an affirmative request must be made for confidentiality.

975 N.E.2d 1283, 1285 n.1 (Ind. 2012).  Indiana Appellate Rule 22 provides that all Indiana cases shall be cited by giving the volume and page of the regional and official reporter (where both exist).  Thus, even though the original version of footnote 1 still exists on the supreme court's website and no order of amendment was issued or entry of amendment appears on the docket, it would appear that we are required to follow West's version of *J.M.*  In light of the most recent version of footnote 1, we are using the names of the claimant and the employer in this case because the parties have not requested the use of initials.

her scheduled shift and call the Department to inform it of her absence, the Department terminated her employment.

Albright filed a claim for unemployment benefits with the Indiana Department of Workforce Development ("DWD"), which found that she was discharged for just cause and ineligible for unemployment benefits. The denial of her claim for unemployment benefits was ultimately affirmed by the DWD Review Board ("Review Board").

Albright appeals the denial of her claim for unemployment benefits, arguing that the Review Board's decision is contrary to law. Specifically, she contends that there was insufficient evidence to support its finding that she was discharged for just cause because she knowingly violated a reasonable and uniformly enforced rule. She also argues that the Review Board erred in failing to find that she had a medically substantiated physical disability and therefore was not subject to disqualification for unemployment benefits. We conclude that the Review Board's denial of her claim is not contrary to law and therefore affirm.

**Facts and Procedural History**

The evidence most favorable to the Review Board's decision shows that on January 1, 1995, Albright began working at the Department as an office manager. The Department's employee handbook provides in relevant part, "If tardiness exceeds two hours, it will be considered unscheduled time off if the employee notifies the Responsible Elected Official, or where appropriate, Department Head. If the employee does not notify the Responsible

3

Elected Official, or where appropriate, Department Head, the employee may be discharged for absence without notification." Claimant's Ex. 1 at 36.[2] Albright was aware of this policy.

In January 2011, the Department reassigned Albright to work as one of eight 911 dispatchers, under the supervision of a chief dispatcher. Albright's duties included answering emergency calls and dispatching emergency medical, fire, and police services. The dispatchers worked twelve-hour shifts, four days on and four days off, with two dispatchers working each shift. Albright worked 6:00 p.m. to 6:00 a.m. The Department's standard policy was that all dispatchers were required to call the chief dispatcher or the sheriff if they were unable to work as scheduled. *Id*. at 35; Tr. at 17.

On April 15, 2011, the chief dispatcher gave Albright an oral reprimand for failing to answer calls in a timely manner and prioritize calls. On April 13, 2012, the chief dispatcher gave Albright a written reprimand for jeopardizing the welfare of a caller.

On May 23, 2012, Albright was at work when an on-duty police officer lit a firework and threw it into the dispatcher's office. The firework exploded behind Albright. She experienced hearing loss and applied for and received sick leave and worker's compensation. On June 20, 2012, Dr. Doug Liepert examined Albright and reported that she had symmetrical mild hearing loss at higher frequencies, benign positional vertigo, and tinnitus, and that she would need further treatment, but nevertheless concluded that she should be able

---

[2] The employee handbook is the employee handbook for the county government of which the Department is a part. The handbook indicates that it is "not for use by the staff of [the Department]." Claimant's Ex. 1 at 29. However, the parties agree that this employee handbook was applied to the employees of the Department.

to continue with work. Claimant's Ex. 2 at 44. Albright knew that the doctor had cleared her to return to work. Albright was referred to a therapist for treatment of her symptoms, which she completed in October 2012.

Albright's four-day work week was scheduled to begin June 25, 2012, but she did not return to work. She took sick days for June 25 and 26 and requested and was granted vacation days for June 26 and 27. She was next scheduled to work July 3 through 6, 2012. She took sick days for July 3 and 4. Albright requested vacation days for July 5 and 6, but the chief dispatcher denied her request and told Albright that she would have to use her sick days. On July 5, 2012, Albright had a death in the family. Instead of using sick days for July 5 and 6, she used two of the three bereavement days available to employees. In a telephone conversation, the chief dispatcher informed Albright that her next four-day work week would begin on July 11, 2012. *Id*. at 16, 33-34, 61-62. Albright told the chief dispatcher that she would use her last bereavement day on July 11. Albright asked to take vacation days for July 12, 13, and 14. The chief dispatcher told Albright that she "could not approve her vacation since she had been off work since May 23rd." *Id*. at 16. On July 12, 2012, Albright's husband called the Department and reported that she had a migraine and would not be working. On July 13, 2012, Albright attempted to apply for unpaid leave pursuant to the Family Medical Leave Act. She did not show up to work her shift, nor did she talk to the chief dispatcher or the sheriff to report her absence. This was the first time that one of the dispatchers had failed to show up as scheduled and call in to report an absence. *Id*. at 59.

On July 14, 2012, Albright received a letter from the Department informing her that her employment was terminated. The letter did not provide the reason for her termination. Albright applied with DWD for unemployment benefits. A claims deputy found that she was discharged for just cause and was therefore ineligible for unemployment benefits. Albright appealed the denial of benefits to the administrative law judge ("ALJ"). Following a hearing, the ALJ found that Albright was aware that she was scheduled to work July 13, 2012, did not show up for work, and did not call in to report her absence. It further found that the Department had a policy prohibiting unexcused absences that was reasonable and uniformly enforced, and that Albright was discharged for violating this policy. The ALJ concluded that Albright knowingly violated a reasonable and uniformly enforced rule and therefore was discharged for just cause and was ineligible for unemployment benefits. Albright appealed the ALJ's decision to the Review Board, which adopted and incorporated the ALJ's findings of fact and conclusions of law and affirmed its decision. Albright appeals.

## Discussion and Decision

Albright appeals the Review Board's denial of her claim for unemployment benefits. The Indiana Unemployment Compensation Act ("the Act"), provides that any decision of the Review Board shall be conclusive and binding as to all questions of fact. Ind. Code § 22-4-17-12(a). When the Review Board's decision is challenged as being contrary to law, our review is limited to a two-part inquiry into: "(1) 'the sufficiency of the facts found to sustain the decision;' and (2) 'the sufficiency of the evidence to sustain the findings of facts.'" *McClain v. Review Bd. of Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1317 (Ind. 1998)

6

(quoting Ind. Code § 22-4-17-12(f)).  Applying this standard, we review "(1) determinations of specific or 'basic' underlying facts, (2) conclusions or inferences from those facts, sometimes called 'ultimate facts,' and (3) conclusions of law."  *Id*.  The Review Board's findings of basic fact are subject to a "substantial evidence" standard of review.  *Id*.  In conducting our analysis, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence most favorable to the Review Board's findings.  *Id*.  The Review Board's conclusions regarding ultimate facts involve an inference or deduction based on the findings of basic fact, and we typically review them to ensure that the Review Board's inference is "reasonable" or "reasonable in light of its findings."  *Id*. at 1317-18 (citation and quotation marks omitted).  We review the Review Board's conclusions of law using a de novo standard.  *Ind. State Univ. v. LaFief*, 888 N.E.2d 184, 186 (Ind. 2008).

The Act provides unemployment benefits to individuals who are "unemployed through no fault of their own." Ind. Code § 22-4-1-1.  Under the Act, an individual is disqualified for unemployment benefits if he or she is discharged for "just cause." Ind. Code § 22-4-15-1(a).  Discharge for just cause includes a "knowing violation of a reasonable and uniformly enforced rule of an employer, including a rule regarding attendance." Ind. Code § 22-4-15-1(d)(2).  When the employer alleges that the employee was discharged for just cause, the employer bears the burden of establishing a prima facie case of discharge for just cause. *Alebro, LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 968 N.E.2d 236, 238 (Ind. Ct. App. 2012).  "Once the employer meets its burden, the burden shifts to the employee to rebut the employer's evidence." *Id*.

7

The Department's policy provides that an employee who takes an unscheduled absence and fails to notify the Department of such an absence "may be discharged for absence without notification." Claimant's Ex. 1 at 36. Albright argues that there is insufficient evidence to support the Review Board's finding that she knowingly violated the Department's policy. To knowingly violate an employer's rule, the employee must (1) know of the rule and (2) know his conduct violated the rule. *Stanrail Corp. v. Review Bd. of Dep't of Workforce Dev.*, 735 N.E.2d 1197, 1203 (Ind. Ct. App. 2000), *trans. denied* (2001).

Albright does not argue that she did not know the Department's policy on unexcused, unreported absences. She asserts that the evidence shows that she did not know for certain whether she was supposed to work July 13, 2012. However, both Albright and the chief dispatcher testified that Albright asked to take vacation days for July 12, 13 and 14, 2012, and that her request was denied. This testimony supports a reasonable inference that Albright knew she was scheduled to work on July 13, 2012. Also, the chief dispatcher specifically testified that she told Albright that she had to work on July 13, 2012. Albright's argument is an invitation to judge witness credibility and reweigh the evidence, which we may not do.

Albright next argues that there was insufficient evidence to support the Review Board's finding that the Department's policy was uniformly enforced. We have explained that

> [a] uniformly enforced rule is one that is carried out in such a way that all persons under the same conditions and in the same circumstances are treated alike. In order to evaluate uniformity one must first define the class of persons against whom uniformity is measured. Typically, this determination is a question of law but it may be informed by appropriate findings as employer practices. Once the class is defined, the question of whether the employer

8

treats the persons within the class consistently is a basic factual inquiry and is reviewed subject to the substantial evidence test and for conformity to law.

*Id.*

Albright contends that the Department failed to properly define the class of persons against whom uniformity of the rule should be measured. Specifically, Albright argues that the chief dispatcher's testimony that Albright was the first employee who had ever failed to show up and call in was in reference to the dispatcher's office only, whereas the unexcused, unreported absence rule was in the employee handbook that applied to all county government employees. According to Albright, the Department's failure to present evidence as to whether county employees outside her department had ever violated the rule is fatal to the Department's position.

We disagree. One of the major objectives of a 911 dispatcher's duties is to assist people in an emergency. As such, a functioning dispatcher's office is essential to public safety. There must be a sufficient number of dispatchers on the job so that emergencies are responded to in a timely manner. We conclude that dispatchers are an appropriately distinct class upon which to assess the uniform enforcement of the unexcused, unreported absence policy.

Albright also argues that the unexcused, unreported absence rule could not have been uniformly enforced because discharge under the rule is discretionary, her supervisor had a history of non-uniform enforcement of other workplace rules, and "it is illogical for the [Review Board] to find that a policy is 'uniformly' enforced when it is presented with only Employer's response to a single, isolated violation." Appellant's Br. at 17. Our supreme

9

court has provided guidance in assessing whether a newly enforced rule has been uniformly enforced.

> A policy that has not been the basis for termination of an employee in the past may nonetheless be "uniformly enforced" even if only one person is the subject of an enforcement action, so long as the purposes underlying uniform enforcement are met. Uniform enforcement gives notice to employees about what punishment they can reasonably anticipate if they violate the rule and it protects employees against arbitrary enforcement. This is important to ensure that employees who are denied compensation under this subsection are only those who lost their jobs for reasons within their control. Here, the purposes were met if, as the ALJ found, McClain knew of the violation, knew or can be fairly charged with knowledge that it could result in termination, and there was no arbitrary enforcement. These factual determinations are supported by substantial evidence. As such we accept them.

*McClain*, 693 N.E.2d at 1319-20 (citations omitted).

Therefore, we must examine whether Albright knew of the violation, whether she knew or can be fairly charged with knowledge that it could result in termination, and whether there was no arbitrary enforcement. We have already determined that Albright knew the rule and knowingly violated it. As for whether she knew or can be fairly charged with knowledge that she could be discharged if she failed to show up for her shift and failed to call in to notify the office, the rule clearly states that discharge "may" be a result of a violation. Claimant's Ex. 1 at 36. Albright argues that because the rule does not mandate discharge, it provides "unbridled discretion" like the rule in *Stanrail*, 735 N.E.2d 1197. Appellant's Br. at 15. We disagree.

The facts in *Stanrail* are nothing like those present here. In *Stanrail*, the employer terminated Willie S. Lemley for violating its attendance policy. Lemley had already taken the maximum number of three-day absences allowed in the calendar year when he got contact

10

dermatitis, for which he provided medical documentation, and had to miss three days. Lemley was denied an exception to the three-day absence policy. Other employees received exceptions to the yearly limit of three-day absences, but the criteria for determining whether an individual was entitled to an exception were not written or published to employees. Therefore, the *Stanrail* court concluded that the employer's attendance policy was not uniformly enforced. *Id*. at 1205-06.

The *Stanrail* employees could not be fairly charged with knowledge as to whether they would receive an exception or not. Here, in addition to the clear language of the Department's policy informing employees that discharge was a possible consequence of violating the policy, it is also significant that standard operating procedure was for all dispatchers to call in if they were unable to work as scheduled, and it is undisputed that all dispatchers had been doing so until Albright's violation. As for the leeway the chief dispatcher provided Albright in requesting vacation days and allowing her husband to call in sick for her, these departures from standard procedures do not impact the ability of the dispatchers' office to perform its function. Significantly, the employee handbook does not state that failure to comply with procedures for requesting vacation days or personally calling[3] may result in the possibility of discharge. Accordingly, the leniency exercised by the chief dispatcher as to these matters would not diminish an employee's understanding that failing to show up and call in could result in discharge. We conclude that Albright knew or

---

[3] Albright mischaracterizes the prohibition on relatives calling in for employees. The employee handbook does not prohibit such calls. Although it states that it is not considered acceptable, it allows for such calls "under emergency conditions, or if not medically possible." Claimant's Ex. 1 at 35.

11

can be fairly charged with the knowledge that an unexcused, unreported absence could result in termination.

There is also no evidence that the rule was arbitrarily enforced. Albright knew about the rule, she knowingly violated the rule, and the rule clearly provides that discharge was a possible consequence of violation. In addition, she had previously received both oral and written warnings. Accordingly, we conclude that the Department's rule was uniformly enforced.

Lastly, Albright argues that the Review Board erred in failing to find that she was exempted from disqualification for unemployment benefits pursuant to Indiana Code Section 22-4-15-1(c)(2), which provides, "An individual whose unemployment is the result of medically substantiated physical disability and who is involuntarily unemployed after having made reasonable efforts to maintain the employment relationship shall not be subject to disqualification under this section for such separation." To qualify for this exception, an employee must

> (1) medically substantiate the termination of his employment is the result of physical disability and (2) substantiate that prior to the termination of his employment he made reasonable efforts to maintain it by sufficiently advising his employer of his disability and the accompanying limitations with the purpose of seeking reasonable alternate work assignments.

*Y.G. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 936 N.E.2d 312, 315 (Ind. Ct. App. 2010) (citation omitted).

Here, although Albright testified that she did not feel ready to return to work, her doctor concluded that despite the lingering minor effects of the blast, she was capable of

12

returning to work. In addition, there is no evidence that Albright made any effort to maintain the employment relationship by requesting to work in a different capacity. We find no error.

Based on the forgoing, we conclude that the Review Board's determination that Albright was discharged for just cause is not contrary to law and affirm its denial of unemployment benefits.

Affirmed.

BARNES, J., and PYLE, J., concur.