Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 07 2014, 8:59 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**LARRY W. DUDLEY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE REVIEW BOARD OF THE INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KYLE HUNTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| LARRY W. DUDLEY, ) | |
|     Appellant-Petitioner, ) | |
| ) | |
|       vs. ) | No. 93A02-1405-EX-326 |
| ) | |
| REVIEW BOARD OF THE INDIANA ) | |
| DEPARTMENT OF WORKFORCE ) | |
| DEVELOPMENT and TC HEARTLAND, LLC, ) | |
|     Appellee-Respondent. ) | |

APPEAL FROM THE REVIEW BOARD OF THE
DEPARTMENTOF WORKFORCE DEVELOPMENT
Steven F. Bier, Chairperson
George H. Baker, Member
Larry A. Dailey, Member
Cause No. 14-R-673

**October 7, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Larry Dudley ("Dudley") appeals the decision of the Review Board of the Indiana Department of Workforce Development ("the Board"), concluding that Dudley is disqualified from receiving unemployment insurance benefits because he was discharged for just cause, pursuant to Indiana Code Section 22-4-15-1(d), from the employment of TC Heartland, LLC ("Heartland"). Dudley presents the sole issue of whether the decision is contrary to law because it lacks evidentiary support. We affirm.

**Facts and Procedural History**

On September 21, 2012, Dudley began full-time employment as a forklift operator for Heartland. On June 26, 2013, he signed the Heartland Standards of Conduct Rules and Regulations Policy.

On August 12, 2013, Dudley received a written warning for alleged misuse of company time. On August 14, 2013, he received a written warning for an alleged safety violation. On September 5, 2013, he received a written warning outlining seven and one-half occurrences of attendance policy violations. On October 25, 2013, he received another written warning detailing an additional attendance policy violation. On January 29, 2014, he received a third written warning with regard to attendance policy violations.

On February 3, 2014, Dudley's supervisor observed Dudley in the break room both before and after he had clocked in and out for lunch. On that date, Dudley received written notice that his employment was terminated. The notice stated that Dudley had been given five written warnings and subsequently engaged in "a misuse of company time." (Tr. 35.)

Dudley was advised: "Based on the sustained violations of our Standards of Conduct and the pattern of poor behavior, Heartland has no choice but to terminate your employment as of 02/03/2014." (Tr. 35.)

On February 9, 2014, Dudley filed for unemployment insurance benefits but a claims deputy of the Indiana Department of Workforce Development determined that Dudley was discharged for good cause and should be denied benefits. Dudley appealed. An administrative hearing was conducted by telephone on March 11, 2014, in which Dudley participated as well as Hope Shank ("Shank"), Heartland's Human Resources Generalist. Kevin Williams ("Williams"), Heartland's Shipping Supervisor, also testified at the telephonic hearing. The ALJ affirmed the deputy's decision and Dudley appealed to the Board.

On April 17, 2014, the Board adopted and incorporated the ALJ's findings and affirmed the decision of the ALJ. This appeal ensued.

**Discussion and Decision**

Standard of Review

The Indiana Unemployment Compensation Act ("the Act"), Indiana Code art. 22-4, provides that "[a]ny decision of the review board shall be conclusive and binding as to all questions of fact." Ind. Code § 22-4-17-12(a). Indiana Code Section 22-4-17-12(f) provides that when the Board's decision is challenged as contrary to law, the reviewing court is presented with a two part inquiry into: (1) "the sufficiency of the facts found to sustain the decision"; and (2) "the sufficiency of the evidence to sustain the findings of facts." Under

3

this standard, courts are called upon to review (1) determinations of specific or "basic" underlying facts, (2) conclusions or inferences from those facts, sometimes called "ultimate facts," and (3) conclusions of law. McClain v. Review Bd. of Ind. Dep't of Workforce Dev., 693 N.E.2d 1314, 1317 (Ind. 1998).

Review of the Board's findings of basic fact is subject to a "substantial evidence" standard of review. Stanrail Corp. v. Review Bd. of Ind. Dep't of Workforce Dev., 735 N.E.2d 1197, 1202 (Ind. Ct. App. 2000), trans. denied. In this analysis, the appellate court neither reweighs the evidence nor assesses the credibility of witnesses and considers only the evidence most favorable to the Board's findings. Id. We will reverse the decision only if there is no substantial evidence to support the Board's findings. Id. The Board's determinations of ultimate facts involve an inference or a deduction based upon the findings of basic fact, and the ultimate facts are typically reviewed to ensure that the Board's inference is reasonable. Id. We examine the logic of the inference drawn and impose any applicable rule of law. Id. Some questions of ultimate fact are within the special competence of the Board, and it is therefore appropriate for us to accord greater deference to the reasonableness of the Board's conclusion. Id. However, as to ultimate facts which are not within the Board's area of expertise, we are more likely to exercise our own judgment. Id.

Finally, we review conclusions of law to determine whether the Board correctly interpreted and applied the law. Id. "In sum, basic facts are reviewed for substantial evidence, conclusions of law are reviewed for their correctness, and ultimate facts are reviewed to determine whether the Board's finding is a reasonable one." Id.

4

<u>Analysis</u>

The Act provides benefits to persons who are out of work through no fault of their own. <u>Giovanoni v. Review Bd. of Ind. Dep't of Workforce Dev.</u>, 927 N.E.2d 906, 908 (Ind. 2010). Unemployment insurance benefits are not an unqualified right and may be denied to claimants who are disqualified by an exception provided in ch. 22-4-15. <u>Id.</u> An individual is disqualified if discharged for "just cause," Ind. Code § 22-4-15-1, defined in subsection (d)(2) to include a "knowing violation of a reasonable and uniformly enforced rule of an employer."

The employer bears the initial burden of establishing that an employee was terminated for just cause. <u>Coleman v. Review Bd. of Indiana Dept. of Workforce Dev.</u>, 905 N.E.2d 1015, 1019 (Ind. Ct. App. 2009). Where violation of an employer's rule is at issue, the employer must show not merely that the employee's conduct violated a known rule, but that the employee knowingly violated the rule. <u>Id.</u> at 1020. When the employer meets its burden, the employee must then present evidence to rebut the employer's prima facie showing. <u>Id.</u>

Heartland introduced exhibits to show Dudley's knowledge of Heartland's rules and policies. Dudley had signed a copy of Heartland's Standards of Conduct, which included the following language:

> The following work conduct infractions are considered serious and generally result in corrective action:
>
> Failure to adhere to starting time, quitting time, or break time policies, or wasting time.

5

(Tr. 26.) Shank testified that the rule regarding the misuse of company time was "applicable to all employees" and that all employees were "subject to discharge for violation of that rule." (Tr. 5.) She further testified that Dudley had previously received a written warning for misusing company time. With regard to the incident of February 3, 2014, she testified:

> [B]asically, on Monday, February 3rd, Larry was observed and witnessed by his supervisor in the break room at 1:55 p.m. He was observed again by his supervisor at 2:37 p.m. in the break room eating his lunch. Our time keeping system reflects that he clocked out for lunch at 2:00 p.m. and he clocked back in from lunch at 2:26 p.m., in which he continued to stay in the break room after clocking back in, which is a misuse of company time which is in violation to [sic] our Standards of Conduct.

(Tr. 5.) Williams testified briefly in corroboration, indicating that he was the person who had seen Dudley in the break room at "1:55, before the punch out, and then at 2:37 he was still eating his lunch." (Tr. 12.)

Dudley testified that Heartland employees were treated uniformly under the Standards of Conduct. Concerning the events of February 3, 2014, Dudley testified that he had not been in the break room at 1:55 and "was on the floor logging in my product at 1:58." (Tr. 10.) Given the opportunity to make a closing statement, Dudley argued: "Mainly that that's not true about none of this, and I did everything that I was supposed to do for the company." (Tr. 13.)

As such, the parties agreed that Heartland had a uniformly enforced rule prohibiting misuse of company time;[1] they disagreed as to whether Dudley was present in the break room

---

[1] Dudley did not challenge the reasonableness of the rule.

6

while clocked in for work. In essence, the ALJ was required to make a determination of credibility because the witnesses testified in direct contradiction to one another.

On appeal, Dudley assumes that he was discharged for absenteeism and argues that he had not accrued sufficient occurrences to warrant termination. He further complains that his version of events was ignored. To the extent that Dudley argues a lack of evidentiary support for the ALJ findings because he had not garnered seven attendance occurrences in a rolling twelve-month period, we observe that the ALJ found that Dudley was discharged for misuse of company time as opposed to violation of the attendance policy. To the extent that Dudley asserts that Heartland exaggerated violations and his own explanation of conduct was ignored, the argument does not comport with our standard of review. We may not reweigh evidence or reassess witness credibility and we review the Board's inferences for reasonableness without reassessing inferences in favor of one or another party. McHugh v. Review Bd. of Ind. Dept. of Workforce Dev., 842 N.E.2d 436, 440 (Ind. Ct. App. 2006).

There is substantial evidence of record to support the ALJ's basic findings of fact that Dudley violated a reasonable and uniformly enforced company rule prohibiting misuse of company time and that he did so knowingly. This supports the ultimate finding of fact and conclusion of law that Dudley was discharged for good cause pursuant to Indiana Code Section 22-4-15-1(d).

Affirmed.

NAJAM, J., and PYLE, J., concur.

7