**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 03 2014, 10:54 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**PAPA NDIAYE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PAPA NDIAYE | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1402-EX-124 |
| | ) | |
| REVIEW BOARD OF THE INDIANA | ) | |
| DEPARTMENT OF WORKFORCE | ) | |
| DEVELOPMENT and FEDERAL | ) | |
| MOGUL CORP., | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE REVIEW BOARD OF THE DEPARTMENT OF WORKFORCE
DEVELOPMENT
Steven F. Bier, Chairperson
George H. Baker, Member
Lawrence A. Dailey, Member
Cause No. 14-R-00225

**September 3, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Papa Ndiaye appeals from the decision of the Review Board of the Indiana Department of Workforce Development (the Review Board) that he is ineligible for unemployment benefits following his discharge from employment with Federal Mogul Corporation.[1]  Ndiaye presents the following restated issue for our review:  Is the Review Board's determination that Ndiaye was discharged for just cause supported by substantial evidence?

We affirm.

The facts as determined by the ALJ and adopted by the Review Board are as follows:

> The Employer, an automotive parts packager and shipper, hired the Claimant on March 5, 2007.  The Claimant worked full time as a forklift driver until his separation on November 1, 2013.
>
> The Employer was advised by its national office that all employees who drive "powered industrial trucks" must complete an acknowledgment of a policy and provide consent for release of personal information to allow the Employer to obtain a copy of the employee's driving record.  The national policy prohibits these employees from operating the Employer's powered industrial truck if they have had a driving while intoxicated conviction within the last three years.
> In mid[-]September, 2013, the Employer told the employees of the new policy and that a consent would need to be signed and given to the Employer.  The policy was posted in several locations around the Employer's facility.
>
> On September 27, 2013, the Claimant was told by his supervisor that he needed to sign the consent.  The Claimant refused to sign until he was given a copy of the policy.  Ms. Lewis[2] gave the Claimant a copy of the

---

[1]  We identify the claimant and employing unit by name because the parties have made no affirmative request to keep their identities confidential.  *See J.M. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 975 N.E.2d 1283 (Ind. 2012).

[2] Becky Lewis is an operations manager and was one of Ndiaye's supervisors.

policy.  Ms. Lewis continued to ask the Claimant to sign the consent and the Claimant continued to refuse.

On October 28, 2013, Ms. Johnson[3] and Mr. Kuczeruk[4] met with the Claimant to request that he sign the consent form.  The Claimant again refused.  Mr. Kuczerak told the Claimant that he had to sign the consent, and if he didn't, that he should not report to work the next day.  The Claimant was given the telephone number of Mr. Kuczeruk and told that if he decided not to sign, to call before work the next day.

The Claimant reported for work on October 29, 2013, without signing the consent and without calling Mr. Kuczeruk.  The Claimant was found on the work floor, doing his job.  Ms. Lewis told the Claimant that he was no longer allowed to drive the forklift, but the Claimant continued to do his job of driving.  The Claimant was suspended from work on that day and discharged the next day for insubordination.

The Employer has a rule against insubordination.  The rule is written and contained in an Employee Handbook which the Claimant received on February 3, 2007 and again on December 4, 2007.  The rule applies to all hourly employees, such as the Claimant, and has been used to discharge other employees under the same or similar circumstances as the Claimant.  The rule prohibits insubordination and advises employees that a violation subjects the employee to immediate discharge.

*Record* at 40.

Following his discharge, Ndiaye applied for unemployment compensation.  On December 9, 2013, a claims deputy with Indiana Department of Workforce Development determined that Ndiaye was entitled to benefits because Federal Mogul had not presented sufficient information to satisfy its burden to establish that Ndiaye's discharge was for just cause.  Federal Mogul appealed the determination of the claims deputy, and a telephonic evidentiary hearing was held before an Administrative Law Judge (ALJ) on

---

[3] Mary Ann Johnson is the Human Resource and Environmental Health and Safety Manager of Federal Mogul's Indianapolis facility.

[4] Terry Kuczeruk is the Plant Manager at Federal Mogul's Indianapolis facility.

January 14, 2014. Following the hearing, the ALJ issued its order concluding that Ndiaye was discharged for just cause and therefore ineligible for unemployment benefits. Ndiaye appealed to the Review Board, and on February 21, 2014, the Review Board issued a decision adopting and incorporating the ALJ's findings of fact and conclusion of law and affirming the ALJ's decision. Ndiaye now appeals.

The Indiana Unemployment Compensation Act provides that "[a]ny decision of the review board shall be conclusive and binding as to all questions of fact." Ind. Code Ann. § 22-4-17-12(a) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly). When the Review Board's decision is challenged as contrary to law, the reviewing court is limited to a two-part inquiry into the "sufficiency of the facts found to sustain the decision and the sufficiency of the evidence to sustain the findings of fact." I.C. § 22-4-17-12(f); *McHugh v. Review Bd. of Ind. Dep't of Workforce Dev*., 842 N.E.2d 436 (Ind. Ct. App. 2006). Under this standard, we are called upon to review "(1) determinations of specific or 'basic' underlying facts, (2) conclusions or inferences from those facts, sometimes called 'ultimate facts,' and (3) conclusions of law." *McClain v. Review Bd. of Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314, 1317 (Ind. 1998).

We review the Review Board's findings of basic fact under a "substantial evidence" standard. *Id.* In this analysis, we neither reweigh the evidence nor assess the credibility of witnesses, and we consider only the evidence most favorable to the Review Board's findings. *McClain v. Review Bd. of Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314. We will reverse only if there is no substantial evidence to support the findings or if

4

a reasonable person, considering only the evidence supporting those findings, would be bound to reach a different result. *KBI, Inc. v. Review Bd. of Ind. Dep't of Workforce Dev.*, 656 N.E.2d 842 (Ind. Ct. App. 1995). The Review Board's conclusions as to ultimate facts involve an inference or deduction based upon the findings of basic fact, and they are reviewed to ensure that the Review Board's inference is reasonable. *McClain v. Review Bd. of Ind. Dep't of Workforce Dev.*, 693 N.E.2d 1314. Finally, we review conclusions of law to determine whether the Review Board correctly interpreted and applied the law. *McHugh v. Review Bd. of Ind. Dep't of Workforce Dev.*, 842 N.E.2d 436.

The Unemployment Compensation Act provides unemployment benefits to individuals who are "unemployed through no fault of their own." I.C. § 22-4-1-1 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly); *Albright v. Review Bd. of Ind. Dep't of Workforce Dev.*, 994 N.E.2d 745, 749 (Ind. Ct. App. 2013). I.C. § 22-4-15-1(a) (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly) provides that an unemployment claimant is ineligible for unemployment benefits if the claimant is discharged from employment for just cause. *See Recker v. Review Bd. of Ind. Dep't of Workforce Dev.*, 958 N.E.2d 1136 (Ind. 2011). When an employer asserts that an employee was discharged for just cause, the employer bears the burden of establishing a prima facie case of discharge for just cause. *Albright v. Review Bd. of Ind. Dep't of Workforce Dev.*, 994 N.E.2d 745. Once the employer satisfies this burden, the burden

5

shifts to the employee to rebut the employer's evidence. *Id.* Whether an employer had just cause to discharge an unemployment claimant is a question of fact for the Review Board. *Gibson v. Review Bd. of Ind. Dep't of Workforce Dev.,* 671 N.E.2d 933 (Ind. Ct. App. 1996).

Just cause for discharge includes "knowing violation of a reasonable and uniformly enforced rule of an employer[.]" I.C. § 22-4-15-1(d); *see also Coleman v. Review Bd. of Ind. Dep't of Workforce Dev.*, 905 N.E.2d 1015 (Ind. Ct. App. 2009). "To have knowingly violated an employer's rule, the employee must know of the rule and must know that his conduct violated the rule." *S.S. LLC v. Review Bd. of Ind. Dep't of Workforce Dev.*, 953 N.E.2d 597, 602 (Ind. Ct. App. 2011). In this case, the Review Board adopted the ALJ's finding that Ndiaye was discharged for just cause for violating Federal Mogul's rule against insubordination by refusing to sign a consent to release his driving records.

Before proceeding to the merits of his appellate claims, we note that Ndiaye is proceeding pro se. Our Supreme Court recently explained that "a pro se litigant is held to the same standards as a trained attorney and is afforded no inherent leniency simply by virtue of being self-represented." *In re G.P.*, 4 N.E.3d 1158, 1164 (Ind. 2014). Accordingly, we will not "indulge in any benevolent presumption" on behalf of a pro se litigant, nor will we "waive any rule for the orderly and proper conduct of his appeal." *Foley v. Mannor*, 844 N.E.2d 494, 496 n.1 (Ind. Ct. App. 2006).

Ndiaye's appellate arguments are difficult to understand and his citations to authority are extremely sparse. Indeed, the argument section of his brief—which spans

6

less than two pages—contains only one citation to authority, namely, I.C. § 22-4-15-1. As best we can discern, Ndiaye argues that he should not have been required to sign the consent to disclose his driving record because the policy that prompted his employers to require employees to execute the consent forms was not new. In support of his assertion, he points out that the written copy of the policy introduced into evidence at the ALJ hearing lists August 26, 2000 as its "Issue Date". *Record* at 26. Ndiaye asserts that he "did comply with that policy when [he got] hired on back in 2007" and that no other employees were required to sign the disclosure form again. *Appellant's Brief* at 7. Ndiaye claims that "[u]nless a new policy was established [he] was not obligated to sign it and such was not the case because there was no proof of [a] new policy." *Id.*

Because he has raised it for the first time on appeal, Ndiaye has waived any claim that he signed a consent to disclose his driving record when he was initially hired. *See Cunningham v. Review Bd. of Ind. Dep't of Workforce Dev.*, 913 N.E.2d 203, 205 (Ind. Ct. App. 2009) (explaining that "a party who fails to raise an issue before an administrative body has waived the issue on appeal"). Waiver notwithstanding, this assertion is not supported by the evidence. Johnson testified that she traveled to a Federal Mogul facility in Kentucky in September 2013 to assist with a safety audit. While there, the director of safety at that facility informed her that Federal Mogul had a policy requiring all drivers of industrial vehicles to have valid driver's licenses and disqualifying persons with convictions for driving under the influence within the past three years. Regardless of when the written policy requiring Federal Mogul to obtain employees' driving records was issued by its national office, the local office was unaware of the

7

requirement until September 2013.  Upon learning of the policy, Johnson took action to comply by meeting with all of the forklift drivers and asking them to fill out forms to verify that they had valid driver's licenses and authorize the disclosure of their driving records.  Ndiaye refused to sign the form authorizing the release of his driving records.  When Ndiaye testified at the ALJ hearing, he made no argument that he signed a consent to release his driving record when he was hired.[5]

Ndiaye also argues that he did not refuse to sign the consent form, but instead insisted on being provided a copy of the policy prior to signing the consent, which he seems to argue that he never received.  Again, the evidence favorable to the Review Board's ruling does not support this assertion.  The evidence establishes not only that the policy was publicly posted at Federal Mogul's facility, but that Ndiaye was personally presented with a copy of the policy upon request.  Ndiaye's argument to the contrary is merely a request to reweigh the evidence, which we will not do on appeal.[6]  For all of these reasons, Ndiaye has not established that the Review Board's conclusion that he was discharged for just cause was not supported by substantial evidence.

Judgment affirmed.

VAIDIK, C.J., and MAY, J., concur.

---

[5] Moreover, even if we were to assume that Ndiaye had executed a consent to disclose his driving record when he was hired in 2007, he has offered nothing to support his claim that he was therefore free to disregard his employer's instructions to execute a new consent form in 2013.

[6] We reach the same conclusion with respect to Ndiaye's argument that he was discharged in retaliation for filing a discrimination complaint against Federal Mogul.