# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**LIBERTY L. ROBERTS**
Collier~Magar & Roberts, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
REVIEW BOARD:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELIZABETH ROGERS**
Deputy Attorney General
Indianapolis, Indiana

FILED

Jun 29 2012, 9:25 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CITY OF CARMEL, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1108-EX-841 |
| | ) | |
| REVIEW BOARD OF THE INDIANA | ) | |
| DEPARTMENT OF WORKFORCE | ) | |
| DEVELOPMENT and GREG PARK, | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE REVIEW BOARD OF THE DEPARTMENT OF WORKFORCE
DEVELOPMENT
The Honorable Steven F. Bier, Chairperson
Cause No. 11-R-2540

June 29, 2012

**OPINION - FOR PUBLICATION**

**BROWN, Judge**

The City of Carmel, Indiana ("Employer") appeals a decision by the Review Board of the Indiana Department of Workforce Development (the "Board") in connection with Greg Park's application for unemployment benefits that Park was discharged, but not for just cause. Employer raises one issue, which we revise and restate as whether the record supports the Board's decision. We reverse and remand.

The relevant facts follow. Park worked as a full time patrol officer for the Carmel Police Department from January 14, 2008, to February 19, 2011. On November 18, 2010, then Chief of Police Michael Fogarty submitted a letter to the Carmel Police Merit Board stating that Park had violated department policies, rules, and regulations. Following a public hearing at which Chief of Police Tim Green and Park testified, the Merit Board issued findings of fact and conclusions of law, concluded that there was substantial and convincing evidence to support the termination of Park's employment, and that the appropriate discipline for Park was termination effective February 19, 2011. In its findings of fact, the Merit Board found that, on September 14, 2010, Park was dispatched to a school to respond to a fight involving two juveniles, that Park's superior officer had arrived on the scene prior to Park and conducted an investigation, and that Park's superior officer instructed Park to arrest one of the juveniles and not the other. The Merit Board further found that Park initially arrested one of the juveniles but later called the home of the other juvenile, spoke with the juvenile about the fight, then arrested the second juvenile, and that Park "disobeyed [his supervising officer's] direct order when he arrested the second juvenile." Exhibits at 38.

Park filed a claim for unemployment benefits, and on March 10, 2011, a deputy for the Indiana Department of Workforce Development issued a Determination of Eligibility which found that Park was discharged for just cause and not eligible for full unemployment benefits. Park appealed the deputy's determination, and after a continuance a telephonic hearing was held on April 18, 2011, before an administrative law judge (the "ALJ"). The ALJ issued a decision which reversed the deputy's determination and concluded that Park was discharged but not for just cause. Specifically, the ALJ's decision provided in part:

Decision – Reversed

FINDINGS OF FACT: [Park] worked as a full time police officer for the Carmel Police Department. [Park] worked from January 14, 2008 until February 19, 2011. [Park] was discharged for violating the Employer's policies and procedures. A recommendation of discharge was submitted to the Carmel Police Merit Broad [sic] stating that [Park] had violated the Employer's policies and procedures.

The Employer states that in September 2010, [Park] failed to obey the order of a supervisor. [Park] was called to the Mosaic School where two juveniles were involved in a fight. [Park] was told to arrest one of the juveniles but not the other. [Park] made a determination later that both juveniles should be arrested based on his own assessment. [Park] as an arresting officer made an independent judgment based on his knowledge of the evidence. No evidence was submitted to show [Park] should overlook evidence which would allow a wrong doer to go free. No information was provided to show that the officer must follow an order regardless of the information know[n] to him. No evidence was submitted to indicate [Park] made a wrongful arrest in the arrest of the second juvenile.

[Park] is accused of intimidating the Mosaic School principal. The Employer did not provide evidence that [Park] had knowledge of the Mosaic principal's statement or complaint to the Employer. The Employer did not provide any evidence of a complaint or statement being made by the principal. No evidence was submitted to show [Park] knew that an investigation was taking place regarding the incident.

3

There are two incidents regarding citizen complaints that are a part of the recommendation to discharge [Park]. [Park] made a traffic stop and failed to give the driver a ticket. [Park] later took the ticket to the driver's home. The second incident involved [Park] using his position as a police officer to obtain information he otherwise would not have been able to obtain. The actual citizen complaints were not presented as evidence for trial. No first hand testimony was provided. The complaints were the basis of the Employer's investigations. The Employer did not identify specific dates when the complaints were received or when the investigations began. Statements obtained from witnesses during the investigations were not provided. [Park] was not aware and did not participate in the investigations until two and three months after the incidents occurred.

The recommendation to the merit board to terminate [Park] was not the result of progressive discipline. [Park] was discharged for investigations of incidents that were deemed serious by the Employer because all the incidents being investigated were occurring at one time. The Employer chose to investigate the incidents at one time. The incidents were not investigated when they occurred and the Employer did not provide evidence that all the complaints came to its attention at one time.

[Park] received a six month evaluation in October of 2010. The evaluation was not submitted as evidence. Three serious investigations of [Park] were ong[o]ing; [Park's] evaluation should have mentioned the receipt of three serious complaints.

CONCLUSIONS OF LAW: The burden of proof for showing just cause for a discharge is on the Employer. Moore v. Review Bd. of Indiana Employment Sec. Div., 461 N.E.2d 737, 739 (Ind.Ct.App. 1984). In Moore the Court stated:

> In a situation where an employee is alleged to have been terminated for just cause, the Employer bears the burden of proof initially. Once the Employer has established a prima facie showing of just cause for termination, the burden shifts to the employee to go forward with evidence rebutting the Employer's claim.

Id.

The Administrative Law Judge finds that the Employer failed to make out a prima facie case of just cause for discharging [Park]. To show that a discharge was for just cause in a rule violation case, the Employer must present evidence of the following: (1) there was a rule; (2) the rule was

4

reasonable; (3) the rule was uniformly enforced; (4) [Park] knew of the rule; and (5) [Park] knowingly violated the rule.

There is no indication that [Park] would be discharged based on any single incident that was the basis of the Employer's recommendation with the exception of retaliation. The Employer failed to show [Park] had knowledge of a complaint which is the basis for the retaliation claim.

The Employer failed to show that [Park] could not make an independent arrest based on information known to him that may have not have been known to his supervisor in the arrest of the second juvenile. It has not been established that there was an insubordinate act. Finally, the Employer did not provide the citizen complaints it received or investigations it conducted. The Employer provided no first-hand testimony of the violations which led to [Park's] discharge.

The Administrative Law Judge holds that the Employer failed to demonstrate just cause for discharging [Park] pursuant to Indiana Code §22-4-15-1(d)(2).

DECISION: The initial determination of the Deputy is REVERSED. [Park] if otherwise eligible is entitled to unemployment insurance benefits effective the week ending February 19, 2011.

DATED AT INDIANA, THIS 18TH DAY OF APRIL, 2011.

Exhibits at 97-98. Employer filed an appeal from the decision of the ALJ, and the Board affirmed the ALJ's decision.

The issue is whether the record supports the decision of the Board that Park was discharged but not for just cause. The Indiana Unemployment Compensation Act provides that "[a]ny decision of the review board shall be conclusive and binding as to all questions of fact." Ind. Code § 22-4-17-12(a). However, Ind. Code § 22-4-17-12(f) provides that when the Board's decision is challenged as contrary to law, the reviewing court is limited to a two part inquiry into: (1) "the sufficiency of the facts found to sustain the decision;" and (2) "the sufficiency of the evidence to sustain the findings of facts."

5

McClain v. Review Bd. of Ind. Dep't of Workforce Dev., 693 N.E.2d 1314, 1317 (Ind. 1998), reh'g denied. The Indiana Supreme Court clarified our standard of review of the Board's decisions in McClain:

> Review of the Board's findings of basic fact [is] subject to a "substantial evidence" standard of review. In this analysis the appellate court neither reweighs the evidence nor assesses the credibility of witnesses and considers only the evidence most favorable to the Board's findings.
>
> The Board's conclusions as to ultimate facts involve an inference or deduction based on the findings of basic fact. These questions of ultimate fact are sometimes described as "questions of law." They are, however, more appropriately characterized as mixed questions of law and fact. As such, they are typically reviewed to ensure that the Board's inference is "reasonable" or "reasonable in light of [the Board's] findings." The term "reasonableness" is conveniently imprecise. Some questions of ultimate fact are within the special competence of the Board. If so, it is appropriate for a court to exercise greater deference to the "reasonableness" of the Board's conclusion. . . . However, not all ultimate facts are within the Board's area of expertise. As to these, the reviewing court is more likely to exercise its own judgment. In either case the court examines the logic of the inference drawn and imposes any rules of law that may drive the result. That inference still requires reversal if the underlying facts are not supported by substantial evidence or the logic of the inference is faulty, even where the agency acts within its expertise, or if the agency proceeds under an incorrect view of the law.

Id. at 1317-1318 (citations and footnotes omitted).

In Indiana, an employee is ineligible for unemployment benefits if he or she is discharged for just cause. Stanrail Corp. v. Review Bd. of Dep't of Workforce Dev., 735 N.E.2d 1197, 1202 (Ind. Ct. App. 2000), trans. denied; Ind. Code § 22-4-15-1. Ind. Code § 22-4-15-1(d) provides that "[d]ischarge for just cause" is defined to include a "knowing violation of a reasonable and uniformly enforced rule of an employer . . . ."

Employer argues that the Board improperly imposed on it "the burden to produce evidence beyond what was required by the law and failed to take into consideration the

6

substantial evidence, including Park's admissions, which supported the finding that Park violated the Department rules." Appellant's Brief at 12. Employer argues that it was not required to produce additional evidence beyond Park's admissions in order to establish that Park violated the Department's rules and that the Board did not have the authority to impose the additional evidentiary burden on it. Employer argues that a written rule required officers, including Park, to "promptly obey any lawful order of a supervisor" and that "Park admitted that he intentionally disregarded his supervisor's order because he disagreed with it." Id. at 13. Employer asserts that the Board "wants to create an exception to the rule that does not exist" and that "[t]he rule does not provide that an officer can disobey the order just because he disagrees with it." Id. at 15. Employer further argues that Park admitted that he failed to conform to rules and regulations when he delivered a written warning to a driver at the home of the driver's parents and that it was improper for the Board to require Employer to have an actual citizen testify at the hearing or to provide dates relating to the receipt of the citizen's complaint. Employer also argues that Park admitted that he used his title and position as a police officer to obtain information that he would not have been able to obtain otherwise. Employer asserts that the Board's finding that "[t]here was no indication that Park would be discharged based on any single incident that was the basis of [its] recommendation with the exception of retaliation" is "directly contrary to the evidence and an improper legal conclusion." Id. at 21. Employer also asserts that the Board's findings that it chose to investigate the incidents at one time and not when they occurred and that Park's

discharge was not based on progressive discipline are not supported by, but are contrary to, the evidence.

The Board asserts that "[w]hile [Employer] argued that the ALJ imposed a burden beyond what is required in unemployment insurance law, it seems that the real crux of [Employer's] argument goes to the weight the ALJ gave the evidence," that "[t]he ALJ determines credibility and made a determination that Park was more credible than the evidence provided by [Employer]," and that "[c]ontrary to [Employer's] assertion, no additional evidentiary burden was imposed upon it by the ALJ." Appellee's Brief at 8. The Board argues that Employer states that it had a written rule which required officers to promptly obey any lawful order of a supervisor but that Employer did not submit a copy of its employee handbook. The Board further argues that Park was able to make an independent determination whether to arrest an individual based on probable cause and is not required to obtain the permission of a supervisor and thus that the Board properly determined that Employer failed to prove that Park violated a rule and disobeyed his supervisor when he arrested both juveniles instead of just one of them. The Board asserts that it did not find the evidence in connection with the citizen complaints to be compelling of discharge and that it was reasonable for the ALJ to conclude that Employer "needed to meet its burden with respect to each complaint made against Park" and that "[e]vidence supporting only one incident was insufficient to justify a finding of discharge for just cause." Id. at 10. The Board also maintains that the ALJ did not rely on Employer's failure to timely investigate the citizen complaints or to engage in progressive discipline in concluding that it failed to meet its burden of proof.

In its reply brief, Employer argues that the Board improperly required it to produce additional evidence beyond a *prima facie* case, that Park admitted to the rule violations, and that "[t]his is not an issue of credibility." Appellant's Reply Brief at 5. Employer further argues that it was not required to prove a "totality" of action or prove every violation in the original charging letter in order to establish just cause for Park's termination at the hearing. Id. Also, Employer argues that the Board's decision does not state that it weighed the evidence and determined that Park was more credible as the Board argues but rather that the decision repeatedly states that "no evidence" was submitted. Id. at 7.

The employer bears the initial burden of establishing that an employee was terminated for just cause. Coleman v. Review Bd. of Ind. Dep't of Workforce Dev., 905 N.E.2d 1015, 1019-1020 (Ind. Ct. App. 2009). To establish a *prima facie* case for just cause discharge for violation of an employer rule, the employer has to show that the claimant: (1) knowingly violated; (2) a reasonable; and (3) uniformly enforced rule. Id. at 1020; Stanrail, 735 N.E.2d at 1203. To have knowingly violated an employer's rules, the employee must: (1) know the rule; and (2) know his conduct violated the rule. Stanrail, 735 N.E.2d at 1203. If an employer meets this burden, the claimant must present evidence to rebut the employer's *prima facie* showing. Coleman, 905 N.E.2d at 1020; Stanrail, 735 N.E.2d at 1203.

A uniformly enforced rule is one that is carried out in such a way that all persons under the same conditions and in the same circumstances are treated alike. Gen. Motors Corp. v. Review Bd. of Ind. Dep't of Workforce Dev., 671 N.E.2d 493, 498 (Ind. Ct.

9

App. 1996). "In order to evaluate uniformity one must first define the class of persons against whom uniformity is measured." Stanrail, 735 N.E.2d at 1203. This court has often stated that "[a]n employer's asserted work rule must be reduced to writing and introduced into evidence to enable this court to fairly and reasonably review the determination that an employee was discharged for 'just cause' for the knowing violation of a rule." Id. at 1205 (citing KBI, Inc. v. Review Bd. of the Ind. Dep't of Workforce Dev., 656 N.E.2d 842, 844 (Ind. Ct. App 1995)); see also Doughty v. Review Bd. of Dep't of Workforce Dev., 784 N.E.2d 524, 527 (Ind. Ct. App. 2003) (citing Watterson v. Review Bd. of Ind. Dep't of Emp't & Training Serv., 568 N.E.2d 1102, 1105 (Ind. Ct. App. 1991) (stating that reducing a rule to writing and introducing it into evidence is "the minimum evidence necessary for the employer to satisfy its burden that it has a rule and that that rule is reasonable and uniformly enforced")). The reason for requiring uniform enforcement of a known and reasonable rule is to give notice to employees about what punishment they can reasonably anticipate if they violate the rule and to protect employees against arbitrary enforcement. Coleman, 905 N.E.2d at 1020.

In this case, at the April 18, 2011 hearing before the ALJ, Employer introduced a number of exhibits, which included the November 18, 2010 letter to the Carmel Police Merit Board prepared by then Chief of Police Fogarty, the Merit Board's findings of fact and conclusions of law, and copies of two written reprimands related to Park. Chief of Police Tim Green and Park testified before the ALJ. The November 18, 2010 letter set forth "G.O. 12.1.3 Lawful Orders," which stated "All personnel shall promptly obey any lawful order of a supervisor including any other related from a supervisor by an officer of

10

the same or lesser rank." Exhibits at 22. In addition, the letter set forth "G.O. 61.1.8," which provided that "[o]nce the officer has stopped the violator and approaches to a point where communications can begin, the following guidelines should be followed in terms of officer-violator relationships: . . . 13. Return the violators [sic] operator's license, registration, and a copy of citation or written warning." Id. at 25. "G.O. 26" provides in part, under subsection B, that "[i]nformation regarding official business, communications records and data shall be disseminated only to those for whom it was intended, according to departmental procedures;" under subsection E that "[m]embers shall not conduct themselves in an immoral and/or indecent manner that impairs their ability to perform as police officers or causes the Department to be brought into disrepute;" and under subsection F that "[w]hen dealing with the public, members shall not use language or gestures that are indecent or discourteous," that "[m]embers shall not enter into official departmental correspondence or official verbal communication with anyone, except in performance of their official duties," that "[m]embers shall not intervene in the assigned case of another member without permission of their commanding officer, but shall give assistance when and where necessary," and "[m]embers shall not use their official position, badge or credentials for personal advantage nor to solicit goods, services or gratuities." Id. at 25-26.

With respect to Employer's claim that Park disobeyed a lawful order, Chief of Police Green testified that a complaint was reported at a school involving a fight between two juveniles. Chief Green testified that Sergeant Keith instructed Park to arrest one of the juveniles and not the other. Chief Green testified that "[a]s a result of that, Officer

11

Park ended up arrest[ing] two individuals and didn't follow the directives and orders of his sergeant, and also was found to have made some negative comments about the sergeant to a civilian employee at this location." Transcript at 16. Chief Green indicated that Park disobeyed an order of Sergeant Keith to arrest one person and not the other. When asked "is there any rule or regulation that you're aware of in the Carmel Police Department that requires a police officer who has statutory authority to arrest to get permission from a supervisor to make an arrest," Chief Green answered "No." Transcript at 61. Chief Green also indicated that Officer Park can decide to arrest someone based on probable cause. When asked whether he thought Park's belief that it would be wrong to arrest one of the juveniles and not the other was rational, Chief Green testified: "I think it's rational to discuss things if you have a different view point on things, but at that point Sergeant Keith had instructed Officer Park on what he wanted done. The issue [is] that Officer Park did not follow that, nor did he speak with . . . Sergeant Keith, regarding that prior to making his decision." Id. Chief Green testified "So that's not the same as an officer, you asked me if an officer can make an arrest based on probable cause. Yes, he or she can, but an officer, once instructed on how to carry something out, knows exactly then what needs to be done and if they have a problem or disagree with that, they can go through a certain procedure and that was not even done, sir." Id. at 62.

Park testified that when he arrived at the school Sergeant Keith stated "this one is going to juvenile, or jail, this one is going home with his mom." Id. at 79. Park testified that Sergeant Keith handed paperwork to him to complete the report and that Sergeant Keith called a juvenile prosecutor. Park testified:

12

Once it was determined that the first juvenile . . . was to be arrested, I then as per rules and regulation transported him back to the police department where . . . I began to get his side of the story, which is what I'm required to do. I'm gonna be doing a report and putting the charges on. After listening to his side of the story, I determined that this was not a case of self defense, but this was a case of mutual combat and that further investigation needed to be conducted.

Id. at 79-80. When asked "[s]o [you] ultimately conducted that investigation and arrested both juveniles," Park answered "I did." Id. at 80. Park does not point to the record to show that, after arresting and interviewing the initial juvenile, he secured permission to arrest the second juvenile or discussed the case or his concerns about any failure to arrest the second juvenile with Sergeant Keith or his supervising officers prior to making the arrest of the second juvenile despite Sergeant Keith's previous instructions or order.

By the nature of their positions, police officers face critical decisions, some presenting life and death consequences. Given the risks posed, discipline is essential. The failure to follow the orders of a superior officer can result in death, grievous injury, or serious financial loss. The failure of an employee to follow the uniformly enforced rules of the employer has long been recognized as just cause for termination because the failure to follow such rules can have serious consequences. When we move from the general employment arenas to police forces, the potential consequences of such failures become much more dire. Here, there is no evidence of any justification for Park's actions in violating the instructions of his superior officer, other than that he himself concluded that the second juvenile should be arrested. Based upon the record, we conclude that Employer demonstrated that Park's actions were in violation of Employer's rules and that Park's arrest of the second juvenile, under the circumstances, constituted a failure to obey

13

a lawful order under Employer's rules. Accordingly, Employer demonstrated just cause for discharging Park, and we reverse the findings of the ALJ and Board on this issue.

In addition, as found by the Merit Board in its decision that Park's employment with the Carmel Police Department be terminated, there were a number of other complaints and rule violations by Park, and Park had prior disciplinary issues. Although separate evidence was submitted on some, but not all of Park's disciplinary history to the ALJ, these findings by the Merit Board were before the ALJ. For instance, Employer presented evidence that, after arresting the first juvenile, Park went back to the school and spoke with the school's principal "during which time [the principal] felt very uncomfortable, felt this was not proper and reported this to the department." Id. at 48. Further, the Merit Board found that Park stopped an eighteen year-old woman for speeding, obtained her driver's license and vehicle registration, released her without issuing a citation or warning, and later completed a written warning for speeding, which he took to the residence of the driver and delivered it to her mother. The driver's mother complained that Park made her feel uneasy and told her that he had stopped and watched her and her daughter play tennis.

Also, in its decision, the Merit Board set forth Park's history of discipline and work performance, which indicated among other incidents that Park was given a verbal counseling session in April 2008 due to his behavior during a field training program showing frustration and his desire to return to another police force; a verbal counseling session in July 2008 in response to his conduct during a stolen vehicle investigation in refusing to take a report; a written reprimand in September 2008 after Park had been

14

admonished by a judge in open court for poor performance, lack of preparation, inconsistency, and being untruthful in Carmel City Court; a verbal counseling session in September 2008 related to an incident in which Park had handcuffed a man who was not under arrest and searched him but did not notice a large knife sticking out of the man's pocket; a counseling and order to change an accident report in September 2008 involving an incident where a school bus driver struck an unoccupied and properly parked vehicle and Park's report stated that the unoccupied vehicle was at fault for the collision; an advisement in May 2009 due to a citizen complaint for his slow response after an alarm company reported an alarm at a citizen's house because Park chose to finish his breakfast before responding to the dispatch; a counseling session reprimand in February 2009 related to Park conducting a traffic stop for an act that occurred on private property and failing to follow proper departmental procedures; a counseling session in December 2009 for neglecting to take a report for check deception and failing to collect the evidence of deception; and an internal investigation in July 2010 based upon two separate complaints from women who advised that Park had been "hitting on them" and video from one of the traffic stops showed that Park hugged the woman several times during the traffic stop.

Based upon the evidence and testimony before the ALJ and Board, we conclude that Employer showed that Park violated a reasonable and uniformly enforced rule related to a lawful order of a supervisor and other departmental rules and that therefore Employer demonstrated that Park was discharged for just cause. Accordingly, we reverse the decision of the Board that Park was discharged but not for just cause and remand for further proceedings consistent with this opinion.

15

For the foregoing reasons, we reverse the decision of the Board and remand for further proceedings.

Reversed and remanded.

BAKER, J., and KIRSCH, J., concur.