Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

Sep 23 2014, 9:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**TRENT J. WILKINSON**
Certified Legal Intern

**FRAN QUIGLEY**
Health & Human Rights Clinic
Indiana University Robert H. McKinney
School of Law
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
REVIEW BOARD:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KRISTIN GARN**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
ALDI INDIANA, L.P.:

**CHRISTOPHER J. DeGROFF**
**GISELLE PEREZ de DONADO**
Seyfarth Shaw LLP
Chicago, Illinois

# IN THE
# COURT OF APPEALS OF INDIANA

PAULAJEAN SKOWRONEK, )
)
    Appellant, )
)
      vs. )    No. 93A02-1401-EX-63
)
REVIEW BOARD OF THE DEPARTMENT )
OF WORKFORCE DEVELOPMENT, and )
ALDI INDIANA, L.P., )
    Appellees. )

APPEAL FROM THE REVIEW BOARD OF THE INDIANA
DEPARTMENT OF WORKFORCE DEVELOPMENT
Hon. Steven F. Bier, Chairperson
Cause No. 13-20185, 13-R-04524

**September 23, 2014**

**MATHIAS, Judge**

Paula Jean Skowronek ("Skowronek") appeals the decision of the Review Board of the Indiana Department of Workforce Development ("the Review Board") affirming the Administrative Law Judge's ("ALJ") decision that Skowronek was discharged from her employment with Aldi Indiana L.P. ("Aldi") for just cause and was therefore ineligible for unemployment benefits. On appeal, Skowronek claims that employment policies she was accused of violating were not uniformly enforced and that she did not knowingly violate these policies. Concluding that there was substantial evidence to support the Review Board's decision, we affirm.

## Facts and Procedural History

On December 19, 2007, Skowronek began to work as a cashier at Aldi, which operates a chain of grocery stores. As part of her employment, Skowronek was given a copy of an employee handbook, which contained the rules with which Aldi employees were expected to comply. Skowronek acknowledged receipt of the handbook and familiarity with the rules by signing a receipt thereof on the day she was hired. Among the rules was one prohibiting theft of company property.

Skowronek also received a copy of Aldi's employee service instructions, contained in the store procedures manual. These rules outline inventory control policies, and include the following rules: (1) an employee may not check out their own purchases or purchase for relatives; (2) all employee purchases must be accompanied by a receipt initialed by a manager before leaving the store; (3) all merchandise consumed in the store

2

must have a proper receipt initialed by a manager attached to the packaging, and any employee consuming merchandise on the premises without paying for it will be dismissed; and (4) any employee caught stealing company property will be dismissed.

On August 24, 2013, Skowronek was scheduled to work from 9:00 a.m. to 2:00 p.m., but her shift manager, Laney Wills ("Wills"), informed her that she would probably be able to leave at 1:00 p.m. Skowronek therefore made plans to be picked up from work at 1:00 p.m. When she went on her lunch break, Skowronek took a box of frozen macaroni and cheese, with a retail price of $1.29, from the shelves. Skowronek took the microwaveable container out of the box and left the box near a cash register. According to Skowronek, she told Wills that she would pay for the food later because she planned on purchasing more items. Wills, however, could not recall Skowronek telling her this. After taking her break and eating the food, however, Skowronek returned back to work without paying for the item. Skowronek eventually worked past her shift and clocked out at 2:15 p.m. and left the store without having paid for the food she had consumed. Skowronek claimed that she simply forgot to pay because her ride had been waiting for her for over an hour.

Aldi became aware of what had happened when another employee found the empty box while cleaning the cash registers. This employee informed Wills, who knew that Skowronek often ate macaroni and cheese during her break. Wills asked the employee who found the box if Skowronek had paid for the item, but the employee did not know. The store manager, Veronica Holloway ("Holloway") was informed that Skowronek may have eaten some food without paying. Holloway then performed a

3

transaction search to see if anyone had paid for a box of frozen macaroni and cheese, and discovered that there had been no sales of frozen macaroni and cheese that day. Holloway also looked through video surveillance footage and saw Skowronek with a box that appeared to be the frozen macaroni and cheese. The footage also showed Skowronek placing the box at the register, going to the break room, walking outside for a few minutes, then going back to the break room without paying for the item. Holloway was aware that Skowronek's usual practice was to leave the box by the register, then place the food in the microwave in the break room, then go outside and smoke. But as Skowronek had in the past always paid for the item on her way outside to smoke, Holloway had never objected to this practice.

Skowronek called the store the following day to explain her version of events, but was unable to reach a manager and eventually left a voicemail message explaining that she had honestly mistaken to pay for the food she had eaten. According to Holloway, Skowronek also stated that she would come in that day to pay for the item; Skowronek claims that she said she would try to pay in a day or two, but did not have a car at the time. Skowronek did not go to the store to pay either that day or the next. Instead, on August 27, 2013, Skowronek met with Holloway and district manager Brett Rayner ("Rayner"). At this meeting, Skowronek repeated her claim that she had simply made an honest mistake in her hurry to leave that day. When Rayner asked if she had paid for the item as of that day, Skowronek admitted that she had not. Skowronek apologized for her actions and indicated that she knew what she had done was wrong. Skowronek was then

4

discharged from her employment. After Skowronek was discharged, she paid $1.29 for the box of macaroni and cheese that she had eaten.

Thereafter, Skowronek began to receive unemployment benefits. On October 13, 2013, a deputy of the Indiana Department of Workforce Development terminated Skowronek's benefits after determining that she had been discharged for just cause. Skowronek appealed this determination, and on December 13, 2013, the parties appeared before an ALJ who held an evidentiary hearing on the matter. The ALJ affirmed the deputy's determination and found that Aldi presented evidence sufficient to establish that Skowronek knowingly violated Aldi's reasonable rules against consuming store merchandise without first paying for the merchandise. Skowronek appealed this decision to the full Review Board, which issued its final decision affirming the ALJ's decision on January 8, 2014. Skowronek now appeals.

## I. Standard of Review

Our review of decisions of the Review Board is rather limited, as we set forth in PKE v. Review Board:

> The Review Board reviews the ALJ's decision for errors of fact, law, or procedure based on the record before the ALJ. Ind. Code § 22-4-17-5(e); see also Trigg v. Review Bd., 445 N.E.2d 1010, 1013 (Ind. Ct. App. 1983). The Review Board "may on the [B]oard's own motion affirm, modify, set aside, remand, or reverse the findings, conclusions, or orders of an administrative law judge[.]" I.C. § 22-4-17-5(e). As the ultimate finder of fact, the Review Board has wide discretion and freedom to decide any and all issues, and may act independently on the evidence before it. Perlman/Rocque v. Review Bd., 649 N.E.2d 701, 706 (Ind. Ct. App. 1995). Here, the Review Board affirmed the ALJ's findings and conclusions in whole.

5

Upon appellate review in our court, "'[a]ny decision of the Review Board shall be conclusive and binding as to all questions of fact.'" McHugh v. Review Bd., 842 N.E.2d 436, 440 (Ind. Ct. App. 2006) (quoting Ind. Code § 22-4-17-12(a) (2005)). Our review of the Board's findings of basic fact are subject to a "substantial evidence" standard of review. Id. In this analysis, we neither reweigh the evidence nor assess the credibility of witnesses, and we consider only the evidence most favorable to the Review Board's findings, and we will reverse only if there is no substantial evidence to support the Board's findings. Id. The Review Board's determinations of ultimate facts involve an inference or deduction based upon the findings of basic fact that is typically reviewed to ensure that the Board's inference is reasonable. Id.

If the Review Board's decision is challenged as contrary to law, our court is limited to a two-part inquiry into the "sufficiency of the facts found to sustain the decision" and the "sufficiency of the evidence to sustain the findings of facts." Id. (quoting Ind. Code § 22-4-17-12(f)). This standard calls upon us to review: (1) determinations of specific or basic underlying facts; (2) conclusions or inferences from those facts, or determinations of ultimate facts; and (3) conclusions of law. Id. Finally, we review *de novo* the Review Board's conclusions of law to determine whether the Board correctly interpreted and applied the law. Id.; M.M. v. Review Bd., 921 N.E.2d 16, 17 (Ind. Ct. App. 2009).

P.K.E. v. Review Bd. of Indiana Dep't of Workforce Dev., 942 N.E.2d 125, 129-30 (Ind. Ct. App. 2011), trans. denied.

## II. The Indiana Unemployment Compensation Act

Indiana Code article 22-4, known as the Indiana Unemployment Compensation Act ("the Act"), was enacted to "provide for payment of benefits to persons unemployed through no fault of their own." P.K.E., 942 N.E.2d at 130 (quoting Ind. Code § 22-4-1-1). Under the Act, an individual who meets the requirements of Indiana Code chapter 22-4-14 and is not disqualified by the exceptions in chapter 22-4-15 is eligible for benefits. Id. An individual is disqualified for unemployment benefits if he is discharged for "just cause." I.C. § 22-4-15-1. As set forth in Indiana Code section 22-4-15-1(d), "Discharge

6

for just cause" as used in this section is defined to include a "knowing violation of a reasonable and uniformly enforced rule of an employer, including a rule regarding attendance." When an employee is alleged to have been discharged for just cause, the employer bears the burden of proof to make a *prima facie* showing of just cause. PKE, 942 N.E.2d at 130. Once the employer meets its burden, the burden then shifts to the employee to rebut the employer's evidence. Id.

To establish a *prima facie* case for just cause discharge for violation of an employer rule, the employer has to show that the claimant knowingly violated a reasonable and uniformly-enforced rule. City of Carmel v. Review Bd., 970 N.E.2d 239, 245 (Ind. Ct. App. 2012). To have knowingly violated an employer's rules, the employee must both know the rule and know her conduct violated the rule. Id. A "uniformly-enforced rule" is one that is carried out in such a way that all persons under the same conditions and in the same circumstances are treated alike. Id. In order to evaluate uniformity, one must first define the class of persons against whom uniformity is measured. Id. An employer's asserted work rule must be reduced to writing and introduced into evidence to enable this court to fairly and reasonably review the determination that an employee was discharged for just cause for the knowing violation of a rule. Id. The reason for requiring uniform enforcement of a known and reasonable rule is to give notice to employees about what punishment they can reasonably anticipate if they violate the rule and to protect employees against arbitrary enforcement. Id.

### III. Uniformly-Enforced Rule

Skowronek first claims that the evidence does not support the Review Board's finding that the rule at issue here—consuming an item without first paying for it—was not uniformly enforced. Specifically, she claims that the rule regarding employee purchases having a receipt with manager initials was not strictly enforced. In support of this, she refers to evidence indicating that other employees would take items and leave the container at a cash register, along with the money to pay for the item, and consume the item without having obtained an initialed receipt. However, Skowronek presented no evidence that other employees wholly failed to pay for the item consumed; she simply presented evidence that other employees failed to obtain an initialed receipt before consuming an item.

Skowronek also refers to evidence indicating that other employees had consumed an item but paid for it only later in their shift. But again, this is different from wholly failing to pay for an item, which is what occurred in the present case. And to the extent that Skowronek herself testified that others had left the store without paying for items and yet were not discharged, neither the ALJ nor the Review Board was required to credit her testimony, and we cannot second-guess such credibility determinations on appeal.[1] See P.K.E., 942 N.E.2d at 129. Indeed, Wills testified that she was unaware of any other incident of an employee consumed a product from the store and left without paying for it.

---

[1] The ALJ noted that Skowronek testified that another employee, shift manager Athena Kelly ("Kelly"), had left the store without paying for an item she had consumed on prior occasions. However, the ALJ also noted that Skowronek stated that she did not report this to Kelly's superiors, who were therefore unaware of any impropriety on the part of Kelly. Therefore, even if the ALJ and Review Board did credit Skowronek's testimony on this matter, it does not necessarily support Skowronek's claim that Aldi failed to uniformly enforce their rule regarding employee purchases.

Considering only the evidence that favors the decision of the Review Board and the reasonable inferences drawn therefrom, we cannot say that the Review Board erred in concluding that Aldi's rules regarding employee purchases were not uniformly enforced. Although there may have been some flexibility in the enforcement of the rule regarding immediate purchase and requiring an initialed receipt, there was no indication that other employees who had wholly failed to pay for the items they had consumed, as had Skowronek, were treated differently than Skowronek was treated.

## IV. Knowing Violation

Skowronek also claims that the Review Board erred in finding that she knowingly violated the uniformly-enforced rule regarding employee purchases. In support of this argument, Skowronek refers to the evidence that indicated that she did not attempt to hide the fact that she had consumed the item she failed to pay for, e.g.: Skowronek placed the empty container at the cash register and stated that she would pay for the item later and she consumed the item in the break room. She also telephoned the store the following day and stated that she had simply forgotten to pay for the item.

We acknowledge that there was ample evidence to support Skowronek's claim that she made an honest mistake and simply forgot to pay for the item and therefore did not knowingly violate the rule regarding purchases by employees. Knowledge is a mental state, and absent an admission by the defendant, the trier of fact must resort to the reasonable inferences from both the direct and circumstantial evidence to determine whether the defendant has the requisite knowledge. Stokes v. State, 922 N.E.2d 758, 764 (Ind. Ct. App. 2010), trans. denied. And another trier-of-fact may have come to a

9

different conclusion. But our standard of review is limited and we cannot say that the ALJ's and Review Board's determination that Skowronek knowingly violated the rule at issue was unsupported by the evidence.

Skowronek's testimony regarding her mental state did not have to be credited by the ALJ or Review Board. See P.K.E., 942 N.E.2d at 129. And the evidence most favorable to the Review Board's decision indicates that Skowronek left the store without paying for the item. Nor did she immediately pay for the item when she allegedly realized her mistake. Instead, she simply called in to the store. Neither did she quickly repay the amount of the item. In fact, she did not pay for the item she had consumed until three days later.[2] Accordingly, we cannot say that the Review Board's determination that Skowronek knowingly violated the rules at issue was unsupported by substantial evidence.

**Conclusion**

We recognize that terminating a long-time employee over the consumption of a box of frozen macaroni and cheese with a retail price of $1.29 may seem harsh or overzealous. But Aldi has clearly-established rules regarding the consumption and purchase of store property by employees. Although Aldi may not have strictly enforced the rule regarding the necessity of an initialed receipt, there was evidence that the rule regarding employees failing to pay for an item were uniformly enforced. And despite the evidence indicating that Skowronek simply forgot to pay for the item, there was some

---

[2] Although Skowronek presented testimony that, if credited, would have explained her delay, the ALJ and the Review Board were not required to credit her testimony.

10

evidence from which the Review Board could have reasonably concluded that Skowronek knowingly failed to pay for the item. Given our deferential standard of review, we cannot say that the decision of the Review Board was unsupported by the evidence.

Affirmed.

CRONE, J., concurs.

RILEY, J., concurs in part and dissents in part with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| PAULAJEAN SKOWRONEK, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1401-EX-63 |
| | ) | |
| REVIEW BOARD OF THE DEPARTMENT | ) | |
| OF WORKFORCE DEVELOPMENT, and | ) | |
| ALDI INDIANA, L.P., | ) | |
| | ) | |
| Appellees. | ) | |

**RILEY, Judge, concurring in part and dissenting in part**

While I concur with the majority's decision that the Review Board appropriately determined that Aldi's rules regarding employees failing to pay for an item were uniformly enforced, I respectfully dissent in part because Aldi did not carry its burden in establishing that Skowronek knowingly failed to pay for the item.

To have knowingly violated an employer's rules, the employee must both know the rule and know her conduct violated the rule. *City of Carmel v. Review Bd.*, 970 N.E.2d 239, 245 (Ind. Ct. App. 2012). "The misconduct which will justify the discharge of an employee so as to make the employee ineligible for unemployment compensation is wanton or willful disregard for the employer's interests, a deliberate violation of the employer's rules, or a wrongful intent." *Moore v. Review Bd. of Ind. Employment Sec. Div.*, 444 N.E.2d 910, 912 (Ind. Ct. App. 1983).

I conclude that Aldi did not carry its burden of proof as the record is devoid of any evidence that Skowronek knowingly or intentionally failed to pay for the frozen macaroni and cheese she had consumed for lunch when she left her employment. Even though her employer had informed her that she would probably be able to leave at 1:00p.m., Skowronek did not leave work until 2:15p.m. By that time, her ride had been waiting for more than an hour and she was late to take care of her infant granddaughter. She was in a hurry and even though she knew her employer's rule, she simply forgot to pay for the item. The following day, Skowronek called her employer twice, explaining that she had honestly mistaken to pay for the food she had eaten. Such inadvertence is not deliberate conduct. *See Moore*, 444 N.E.2d at 912. To uphold the Board's decision, the majority relies on the fact that Skowronek did not pay the $1.29 for the frozen macaroni and cheese until three days later. However, in my opinion this is irrelevant as it does not establish that at the time Skowronek rushed out of the store, she knowingly and intentionally left without paying for the item. I would reverse the decision of the Review Board.