## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 07 2015, 8:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Richard L. Darst
Cohen Garelick & Glazier
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Kristin Garn
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

A.R.,

*Appellant-Petitioner,*

v.

Review Board of the Indiana Department of Workforce Development and Housing Authority of the City of Kokomo,

*Appellee-Respondent.*

August 7, 2015

Court of Appeals Case No. 93A02-1411-EX-800

Appeal from the Review Board of the Department of Workforce Development.

The Honorable Steven F. Bier, Chairperson.

Case No. 14-R-0277

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant, Angela R. Riley (Riley),[1] appeals the decision of the Unemployment Insurance Review Board (the Review Board) of the Indiana Department of Workforce Development (DWD), which upheld the decision of the administrative law judge (ALJ) denying her claim for unemployment compensation benefits on the basis that she had been terminated from her employment for just cause.

We affirm.

## ISSUES

Riley raises two issues on appeal, which we restate as follows:

(1) Whether there is sufficient evidence to support the Review Board's determination that Riley is ineligible for unemployment compensation benefits because she was discharged for just cause; and

(2) Whether Riley's due process rights were violated.

## FACTS AND PROCEDURAL HISTORY

On November 3, 2008, the Housing Authority of the City of Kokomo (Employer) hired Riley as a full-time Application Processing Clerk. Riley

---

[1] The parties refer to Riley using her initials. However, our court has previously found that, notwithstanding the confidentiality mandate of Indiana Code section 22-4-19-6 and Indiana Administrative Rule 9(G), "it is appropriate for this [c]ourt to use the full names of parties in routine appeals from the Review Board." *Moore v. Review Bd. of Ind. Dep't of Workforce Development*, 951 N.E.2d 301, 306 (Ind. Ct. App. 2011). *See also J.M. v. Review Bd. of Ind. Dep't of Workforce Development*, 975 N.E.2d 1283, 1285 n.1 (Ind. 2012) (noting that the court's practice "going forward will be to keep the[] parties confidential only if they make an affirmative request"). Therefore, as we did not receive an affirmative request, we will utilize Riley's name.

described that her job duties included maintaining the waiting list of applicants seeking housing. Once a housing unit became available, Riley was responsible for assigning the unit to the next eligible applicant.

[5] On May 7, 2014, Riley learned from a maintenance worker that individuals were in the process of moving into an apartment which had not been authorized for occupancy. Just two months earlier, Riley had received a written warning for similarly arranging a housing transfer without first having an inspection conducted. Upon learning of the unauthorized move-in, Riley contacted Employer's chief executive officer, Debra Cook (CEO Cook), and requested an immediate meeting in order to demand "an answer" as to why these tenants were being permitted to move into an unpainted, dirty unit. (Tr. p. 25). CEO Cook informed Riley that she was in a meeting and could not see her right away. CEO Cook advised Riley to discuss the issue with her immediate supervisor. Instead, Riley contacted the Indianapolis office to report that tenants had been permitted to move into an apartment that was still "on administrative hold." (Tr. p. 25).

[6] Riley "was agitated that the tenants had been allowed to move into the apartment." (Appellant's App. p. 4). Riley's supervisor, Property Manager Tina Bellis (Property Manager Bellis), spoke with CEO Cook and learned that management was aware of the unauthorized tenants and was handling the issue. Property Manager Bellis relayed this information to Riley, but Riley "became very loud and irritable" and complained to other employees about her dissatisfaction with Employer's procedures. (Tr. p. 21). Because Riley was

causing a disturbance throughout the office, CEO Cook suspended her meeting and asked an assistant property manager to send Riley into her office. Instead of reporting to CEO Cook's office as instructed, Riley called CEO Cook and "said she would not come to [her] office" because it "wouldn't do any good." (Tr. p. 12). According to Riley, she had already handled the issue by reporting the matter to the Indianapolis office, so "there was no reason for [her] to [go] down to [CEO Cook's] office." (Tr. p. 26).

[7] Employer's Personnel Policy Manual provides that an employee "may be subject to discharge upon the first offense" for committing "insubordination – [f]ailing to follow or comply with instructions or work orders in a timely manner." (Appellant's App. p. 15). After Riley refused CEO Cook's directive to come to her office, CEO Cook resolved to terminate Riley's employment. However, the director of human resources was out of the office and could not process Riley's termination until the following morning. In addition, Riley did not report to work for the two days following the incident, taking one day off under the Family and Medical Leave Act (FMLA) and one vacation day. Thus, it was not until Riley returned to work the following Monday, May 12, 2014, that she was notified of the termination.

[8] Riley subsequently filed a claim with the DWD for unemployment compensation benefits. On July 31, 2014, a DWD deputy rendered an initial determination that Riley had not been terminated for just cause and was therefore eligible for unemployment compensation benefits. On August 9, 2014, Employer appealed the deputy's ruling to an ALJ. On September 23,

2014, the ALJ conducted a hearing by a telephone conference call, and on September 26, 2014, the ALJ issued a decision, reversing the DWD deputy and finding Riley ineligible for unemployment compensation benefits. In particular, the ALJ concluded that Riley "knowingly violated reasonable and uniformly enforced rules. [Riley] was insubordinate when [she] refused to go to [CEO Cook's] office. The request by [CEO Cook] was a reasonable request. [Riley] was discharged for just cause as defined by [Indiana Code section] 22-4-15-1." (Appellant's App. p. 5).

On October 10, 2014, Riley appealed the ALJ's decision to the Review Board. On October 27, 2014, the Review Board affirmed the ALJ's decision, adopting and incorporating by reference the ALJ's findings of fact and conclusions of law. The Review Board added a specific finding that CEO Cook possessed the "authority to require [Riley] to report to her office" and despite the fact that CEO Cook's instruction was "reasonable[,]" Riley "refused to do so." (Appellant's App. p. 2).

Riley now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

"Any decision of the [R]eview [B]oard shall be conclusive and binding as to all questions of fact." Ind. Code § 22-4-17-12(a). The Review Board's decision may only be challenged on appeal "as being contrary to law, in which case we examine the sufficiency of the facts found to sustain the decision and the

sufficiency of the evidence to sustain the findings of facts." *Coleman v. Review Bd. of Ind. Dep't of Workforce Development*, 905 N.E.2d 1015, 1019 (Ind. Ct. App. 2009). Pursuant to this standard, "we review determinations of specific or basic underlying facts, conclusions or inferences drawn from those facts, and legal conclusions." *Id.*

[12] Our standard of review is threefold: "(1) findings of basic fact are reviewed for substantial evidence; (2) findings of mixed questions of law and fact—ultimate facts—are reviewed for reasonableness; and (3) legal propositions are reviewed for correctness." *Reed v. Review Bd. of Ind. Dep't of Workforce Development*, 32 N.E.3d 814, 822 (Ind. Ct. App. 2015). We will consider only the evidence most favorable to the Review Board's findings, without reweighing evidence or assessing the credibility of witnesses. *J.M.*, 975 N.E.2d at 1286. We will affirm the decision of the Review Board unless there is no substantial evidence to support its findings. *Id.*

## II. *Sufficiency of the Evidence*

[13] The Indiana Unemployment Compensation Act was enacted, in part, "to provide for payment of benefits to persons unemployed through no fault of their own." I.C. § 22-4-1-1. Accordingly, an unemployed claimant is ineligible for unemployment benefits if she is discharged for just cause. I.C. § 22-4-15-1(a). "Discharge for just cause" is defined to include, but is not limited to:

> (1) separation initiated by an employer for falsification of an employment application to obtain employment through subterfuge;

(2) *knowing violation of a reasonable and uniformly enforced rule of an employer*, including a rule regarding attendance;

(3) if an employer does not have a rule regarding attendance, an individual's unsatisfactory attendance, if the individual cannot show good cause for absences or tardiness;

(4) damaging the employer's property through willful negligence;

(5) refusing to obey instructions;

(6) reporting to work under the influence of alcohol or drugs or consuming alcohol or drugs on employer's premises during working hours;

(7) conduct endangering safety of self or coworkers;

(8) incarceration in jail following conviction of a misdemeanor or felony by a court of competent jurisdiction; or

(9) any breach of duty in connection with work which is reasonably owed an employer by an employee.

I.C. § 22-4-15-1(d) (emphasis added). When an employer alleges that an employee has been discharged for just cause, "the employer bears the burden of establishing a prima facie case of discharge for just cause." *Albright v. Review Bd. of Ind. Dep't of Workforce Development*, 994 N.E.2d 745, 750 (Ind. Ct. App. 2013). Once the employer has satisfied its burden, the onus "shifts to the employee to rebut the employer's evidence." *Id.*

[14] In this case, the Review Board found that Riley was discharged for just cause under subsection (d)(2) based on her violation of Employer's rule against insubordination. Riley now claims that there is insufficient evidence to support this determination. First, she argues that there is a lack of substantial evidence that she was insubordinate on March 6, 2014, for which she received a written warning on March 7, 2014, for arranging an improper housing transfer. We, however, find no merit or relevancy in this argument because the March 7,

2014 warning was not the basis for Riley's termination. Rather, at the hearing before the ALJ, Employer relied on the May 7, 2014 incident—in which Riley refused CEO Cook's instruction to report to her office—as its reason for terminating Riley's employment and only briefly mentioned that Riley had been insubordinate on a prior occasion. Furthermore, neither the ALJ nor the Review Board cited Riley's previous warning for insubordination as a just cause for discharge. Instead, both the ALJ and the Review Board exclusively found that Riley violated Employer's rule against insubordination by refusing to go to CEO Cook's office. Likewise, we will limit our review solely to whether there is substantial evidence of just cause to terminate Riley based on her insubordinate behavior on May 7, 2014.

[15] "To knowingly violate an employer's rule, the employee must (1) know of the rule and (2) know his conduct violated the rule." *Id.* A review of the record reveals that Riley had received a copy of Employer's Personnel Policy Manual, which identifies "insubordination—[f]ailing to follow or comply with instructions or work orders in a timely manner"—as an offense for which an employee is subject to discharge in the first instance. (Appellant's App. p. 15). On May 7, 2014, CEO Cook, who is undisputedly Riley's superior, asked an assistant property manager to send Riley into her office because of the disturbance Riley was creating throughout the workplace. When the assistant property manager told Riley that CEO Cook "would like to see her," Riley instead called CEO Cook and "said she would not come to [her] office." (Tr. pp. 12, 20). During the hearing before the ALJ, Riley admitted that she saw

"no reason . . . to [go] down to [CEO Cook's] office" because "the situation had already been tak[en] care of." (Tr. p. 26). By directly refusing to comply with CEO Cook's instruction, we find sufficient evidence that Riley knowingly violated Employer's rule against insubordination. Nevertheless, Riley attempts to redirect the blame, asserting that it was Employer who violated the policy against allowing tenants to move into an unprepared apartment and that it was CEO Cook who initially refused Riley's request for a meeting. Ultimately, these allegations have no bearing on the fact that Riley—as the employee—was subject to Employer's rule against insubordination, and Riley violated this rule when she disregarded CEO Cook's instruction.

[16] In order for an employee's rule violation to merit "[d]ischarge for just cause[,]" the employer's rule must be "reasonable and uniformly enforced." I.C. § 22-4-15-1(d)(2). A work rule will be found to be reasonable if it:

> (1) is lawful;
> (2) is related to the employer's business operations;
> (3) is intended by the employer to broadly apply to classes, categories, or all employees;
> (4) does not create a harsh or unconscionable requirement for employees.

646 Ind. Admin. Code § 5-8-5. Riley contends that Employer's rule is unreasonable because it "is enforced in a discriminatory or retaliatory manner based on FMLA leave, sex, race, or disability." (Appellant's Br. p. 21). We disagree. Employer's director of human resources testified that the policy against insubordination applies to and is enforced equally against all employees.

CEO Cook testified that the rule exists because "insubordination will impact the effective and efficient operations of this agency, and it negatively affects employee moral[e]." (Tr. p. 13). The Personnel Policy Manual further explains that the rules are intended "to insure continuous and successful [Employer] operations." (Appellant's App. p. 14). We therefore find that Employer's rule against insubordination is reasonable.

[17] Riley also argues that Employer's rule is not a uniformly enforced policy. "A uniformly enforced rule is one that is carried out in such a way that all persons under the same conditions and in the same circumstances are treated alike." *City of Carmel v. Review Bd. of Ind. Dep't of Workforce Development*, 970 N.E.2d 239, 245 (Ind. Ct. App. 2012). More specifically, Riley contends that "Employer presented no evidence that it terminated anyone for going 'over the head' of the CEO and complaining to the Indianapolis office" or for improper housing transfers. (Appellant's Br. 23). Yet, neither of these reasons were proffered as Employer's grounds for terminating Riley. As previously stated, the ALJ and Review Board found that Riley was terminated for insubordination because she disregarded CEO Cook's instruction to report to her office, and the ALJ concluded that "[a]ny employee who committed the same action as [Riley] would also be discharged." (Appellant's App. p. 4).

[18] With respect to uniform enforcement, our supreme court has found:

> Uniform enforcement gives notice to employees about what punishment they can reasonably anticipate if they violate the rule and it protects employees against arbitrary enforcement. This is important to ensure that employees who are denied compensation under this

subsection are only those who lost their jobs for reasons within their control. Here, the purposes were met if . . . [Riley] knew of the violation, knew or can be fairly charged with knowledge that it could result in termination, and there was no arbitrary enforcement.

*McClain v. Review Bd. of Ind. Dep't of Workforce Development*, 693 N.E.2d 1314, 1319-20 (Ind. 1998) (internal citation omitted), *reh'g denied*. Here, Employer's written Personnel Policy Manual was introduced into evidence and clearly states that an employee may be subject to discharge for a first offense of insubordination. *See City of Carmel*, 970 N.E.2d at 245 (requiring a rule to be reduced to writing and introduced into evidence "to enable this court to fairly and reasonably review the determination that an employee was discharged for 'just cause' for the knowing violation of a rule"). Additionally, Employer's director of human resources testified that the rule against insubordination applies equally to all employees—regardless of whether full-time or part-time. *See id.* ("In order to evaluate uniformity one must first define the class of persons against whom uniformity is measured."). Thus, there is sufficient evidence to support the determination that Employer's rule is uniformly enforced.

[19] Riley further contends that her alleged insubordination was merely "a pretext for discrimination and retaliation against [her] for her disability and for her taking substantial FMLA leave that she was entitled to by law." (Appellant's Br. p. 13).[2] During the hearing, CEO Cook repeatedly stated that Riley's

---

[2] We decline to address the numerous arguments posited by Riley which have no relevance or basis in the record, such as her bald assertion that CEO Cook failed "to engage in an interactive process to find a

discharge was based entirely on her insubordination and was in no way related to her FMLA leave. Thus, Riley's argument is nothing more than a request that we reweigh the evidence and judge witness credibility, which we will not do. It was entirely within the discretion of the ALJ—and, in turn, the Review Board—to find CEO Cook's testimony to be more credible than Riley's.

### III. *Due Process*

Riley next claims that she was "denied her rights to a fair hearing and an impartial tribunal." (Appellant's Br. p. 28). We find her argument is tantamount to a claim that she was denied due process. It is well established that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Wolf Lake Pub, Inc. v. Review Bd. of Ind. Dep't of Workforce Development*, 930 N.E.2d 1138, 1141 (Ind. Ct. App. 2010) (alteration in original). Whether a party was denied due process is a question of law, which our court reviews *de novo*. *Id.*

First, Riley asserts that the ALJ improperly excluded and ignored evidence regarding the "real reasons" behind Riley's termination—*i.e.*, Riley's disability, retaliation for Riley taking FMLA leave, and retaliation for Riley "going 'over the head'" of CEO Cook by complaining to the Indianapolis office. (Appellant's Br. pp. 28-29). "In general, the Indiana Rules of Trial Procedure and the Indiana Rules of Evidence shall govern proceedings before an [ALJ] or

reasonable accommodation for [Riley's] bipolar disorder, especially when it was aggravated by the CEO, and the retaliation against [Riley] because of her complaints." (Appellant's Br. p. 18).

the [R]eview [B]oard." 646 IAC § 5-10-5(a). The parties are afforded an opportunity to "present evidence as the [ALJ] deems necessary for determining the substantial rights of the parties." 646 IAC § 5-10-5(a). In this case, the ALJ considered Employer's testimony that Riley was fired for insubordination based on her failure to report to CEO Cook's office, and the ALJ also heard Riley's testimony that she believed she was terminated out of retaliation and discrimination. Because it is the role of the ALJ, not this court, to weigh the evidence, it was within the discretion of the ALJ to find Employer's testimony more credible and to subsequently limit the testimony to the events directly relating to Riley's discharge. *See* Ind. Evidence Rule 401 (stating that evidence is relevant, in part, if "the fact is of consequence in determining the action"); Evid. R. 402 (excluding irrelevant evidence).

[22] Second, Riley alleges that the ALJ "failed to be impartial by repeatedly asking leading questions in favor of the Employer" and "refused to allow [Riley] to ask questions on the same subjects." (Appellant's Br. p. 29). We find no merit in this argument. It is the prerogative of the ALJ to "examine all witnesses" in order to resolve the case. 646 IAC § 5-10-5(a)(1). In determining whether information concerning Riley's FMLA leave was relevant, the ALJ directly asked Employer whether the FMLA leave had any bearing on its decision to terminate Riley. In turn, the ALJ also questioned Riley as to why she believed she was terminated and afforded Riley an ample opportunity to explain her opinion that she was fired in retaliation for contacting the Indianapolis office and for taking FMLA leave. We again reiterate that it was within the discretion

of the hearing officer to credit Employer's testimony that Riley was terminated solely due to her insubordination. It is well settled that "[d]ue process requires a neutral, unbiased decision maker in" administrative determinations. *Perry-Worth Concerned Citizens v. Bd. of Comm'rs of Boone Cnty.*, 723 N.E.2d 457, 460 (Ind. Ct. App. 2000), *trans. denied*. Here, we find that Riley has failed to demonstrate that the ALJ acted in a biased or prejudicial manner; thus, there is no due process violation.

## CONCLUSION

[23] Based on the foregoing, we conclude that there is substantial evidence to establish that Riley was terminated for just cause and is therefore ineligible for unemployment compensation benefits. We further conclude that Riley's due process rights were not violated.

[24] Affirmed.

[25] Bailey, J. and Barnes, J. concur